**In re CLARK et al.**

[Cite as *In re Clark* (2001), 141 Ohio App.3d 55.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 76852.

Decided Jan. 29, 2001.

*James A. Draper,* Cuyahoga County Public Defender, and *Patricia Koch Windham,* Assistant Public Defender, for appellant.

*William D. Mason,* Cuyahoga County Prosecuting Attorney, and *Gail Denise Baker,* Assistant Prosecuting Attorney, for appellee.

*Melinda J. Annandale,* guardian *ad litem.*

---

ANNE L. KILBANE, Judge.

This is an appeal from an order of Juvenile Court Judge Patrick F. Corrigan granting appellee Cuyahoga County Department of Child and Family Services ("CCDCFS") permanent custody of the three children of appellant Deborah Clark. She claims that the permanent custody proceedings were procedurally flawed because the judge did not adequately determine that she understood her

rights under Juv.R. 29, he allowed the permanent custody hearing to go forward although the children's guardian *ad litem* was absent, and the guardian *ad litem* could not properly act as her son Dwayne's lawyer, because the child had expressed a desire to remain with his mother, which conflicted with the guardian *ad litem*'s recommendation. We agree that the permanent custody hearing was procedurally deficient and reverse, reinstate temporary custody, and remand the cause.

On September 18, 1998, CCDCFS filed a complaint seeking permanent custody of Clark's children, Dwayne, age six, Dawhon, age five, and Destiny, twenty-three months old. Clark, then thirty-eight years old, had a history of supervision by CCDCFS dating back to approximately 1985, concerning yet another child. In 1995, CCDCFS took Dwayne into emergency custody after Clark was hospitalized with a collapsed lung. When she recovered, however, she was not reunited with her children and was referred for treatment for her drug addiction. Between March 1995 and May 1995, she underwent drug treatment programs but was discharged for continued use, and Dwayne remained in CCDCFS's temporary custody.

By June 1995, Clark had successfully completed a treatment program and on June 21, 1995, she delivered Dawhon. This child was originally allowed to stay with Clark but by July 25, 1995, he was taken into CCDCFS custody because Clark had not successfully completed the aftercare programs in her CCDCFS case plan. In June 1997, the children were reunited with their mother after she successfully completed a drug-treatment program and CCDCFS maintained continued supervision of the household.

Prior to Destiny's birth, CCDCFS suspected that Clark was again taking drugs but was unable to verify the suspicion because she failed to submit to a drug test. Destiny was born August 30, 1998, and tested positive for drugs. On September 17, 1998, CCDCFS requested and received emergency custody of Dwayne, Dawhon, and Destiny and filed a complaint for permanent custody the next day, alleging that Clark was again using drugs, showed a pattern of drug abuse, that her current housing situation was threatened because it was contingent on her maintaining sobriety, and that the children were "neglected" pursuant to R.C. 2151.03(A)(2). Melinda Annandale was appointed guardian *ad litem* ("GAL") for the children, but neither Annandale nor any one was appointed as the children's attorney.[1]

---

1. The record does not indicate whether Annandale was an attorney eligible to represent the children in the proceedings.

On March 25, 1999, following negotiations, Clark, Reginald McKinney, the father of Dwayne and Dawhon, and Troy Newell, Destiny's father, admitted the allegations of an amended complaint and the children were adjudged neglected.

A dispositional hearing was conducted on May 19, 1999, despite the absence of the GAL, who had failed to submit a recommendation to the court and over Newell's objection. The judge stated that the GAL could review the transcript and make her recommendations thereafter. Evidence was presented about Clark's history of drug abuse and her current condition; Newell testified that he wanted custody of Destiny within his family; and Karen Snyder, case manager for the children's foster care, testified that Dwayne had a strong desire to return to his mother. On June 28, 1999, the GAL submitted a recommendation that the children be permanently removed from their mother and opined that Dwayne's desire to be with his mother was unhealthy, as he had undertaken the role of caregiver in that relationship. On July 20, 1999, the judge ordered the children committed to the permanent custody of CCDCFS.

Clark's first assignment of error states:

"I. The court violated Ms. Clark's due process rights by accepting admissions without fully apprising her of her constitutional [*sic*] rights as required by Juvenile Rule 29(D)."

Clark claims that her admissions to the allegations of the amended complaint were made without proper knowledge and understanding of her rights under Juv.R. 29, which addresses procedural aspects of the adjudicatory hearing and, as a result, there was an unchallenged adjudication that her children were neglected under R.C. 2151.03(A)(2). In relevant part, Juv.R. 29 states:

"(B) Advisement and findings at the commencement of the hearing

"At the beginning of the hearing, the court shall do all of the following:

"(1) Ascertain whether notice requirements have been complied with and, if not, whether the affected parties waive compliance;

"(2) Inform the parties of the substance of the complaint, the purpose of the hearing, and possible consequences of the hearing, including the possibility that the cause may be transferred to the appropriate adult court under Juv.R. 30 where the complaint alleges that a child fifteen years of age or over is delinquent by conduct that would constitute a felony if committed by an adult;

"(3) Inform unrepresented parties of their right to counsel and determine if those parties are waiving their right to counsel;

"(4) Appoint counsel for any unrepresented party under Juv.R. 4(A) who does not waive the right to counsel;

"(5) Inform any unrepresented party who waives the right to counsel of the right: to obtain counsel at any stage of the proceedings, to remain silent, to offer evidence, to cross-examine witnesses, and, upon request, to have a record of all proceedings made, at public expense if indigent.

"(C) Entry of admission or denial

"The court shall request each party against whom allegations are made in the complaint to admit or deny the allegations. A failure or refusal to admit the allegations shall be deemed a denial.

"(D) Initial procedure upon entry of an admission

"The court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following:

"(1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;

"(2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing. * * *"

█ The determination of whether a party's admission complies with Juv.R. 29 is similar to that used in determining whether a criminal defendant's guilty plea complies with Crim.R. 11. See, *e.g., In re West* (1998), 128 Ohio App.3d 356, 359, 714 N.E.2d 988, 990 (citing Crim.R. 11 cases). We review the record for substantial compliance with Juv.R. 29. *Id.* The issue is not whether the judge strictly complied with rote, but whether the parties adequately understood their rights and the effect of their admissions. *Id.; State v. Nero* (1990), 56 Ohio St.3d 106, 108, 564 N.E.2d 474, 476.

█ The judge complied with Juv.R. 29(B) at the initial hearing on the complaint, held November 12, 1998. He explained Clark's rights at that hearing, and she was represented by a lawyer at that hearing, as well as during her subsequent admission to the amended complaint and during the dispositional hearing. At the March 25, 1999 hearing, in which Clark admitted the allegations of the amended complaint, the judge personally addressed her and asked her specifically whether she had discussed the case with her attorney, whether her admission was freely made, whether any promises were made to her, and whether she understood that her admission would result in a finding of neglect, and that the judge would then have the authority to permanently divest her of her parental rights if he found it in the best interest of the children to do so. Clark indicated her understanding of these consequences in the presence of an attorney from the Ohio Public Defender's Office who represented her throughout the proceedings. The judge was not required to repeat the rote language of

**60**

Juv.R. 29(D) in Clark's presence, but simply determine that she understood the allegations against her and the consequences of her admission, including the fact that by admitting the allegations her children would be adjudged neglected without any further hearing. The judge substantially complied with Juv.R. 29(D), and the record indicates that Clark was aware of the consequences of her admission. The first assignment of error is overruled.

Clark's third assignment of error states:

"III. The trial court's failure to determine whether the wishes of Dwayne Clark conflicted with his guardian ad litem's recommendation, and subsequent failure to appoint counsel to zealously represent Dwayne Clark impaired a fundamental liberty interest of Dwayne and Ms. Clark without due process of law."

■ We note initially that Clark has standing to assert the children's right to an attorney here. Because of Dwayne's desire for reunification, the GAL's absence from the dispositional hearing, and her subsequent recommendation that Dwayne's wishes were not in his best interest, we are satisfied that the failure to appoint an attorney for the children was sufficiently prejudicial to Clark's interest. *In re Smith* (1991), 77 Ohio App.3d 1, 13, 601 N.E.2d 45, 52–53.

■ Clark apparently assumes that the GAL was also acting as the children's lawyer and that a conflict existed when Dwayne expressed an interest in remaining with his mother. An appointment to act as GAL, however, does not constitute an appointment to act as the children's lawyer without an express appointment also to act as such. *In re Duncan/Walker Children* (1996), 109 Ohio App.3d 841, 844–845, 673 N.E.2d 217, 218–219. In this case, neither the GAL nor any other lawyer was appointed to represent the children. We therefore have no need to determine whether the asserted conflict between Dwayne and the GAL disqualified her from acting as attorney for him or the other children. Because we find that the children had no lawyer, the question is whether they were entitled to legal representation in the first place. If they were entitled to a lawyer, we must reverse the findings and remand for further proceedings concerning all the children. Only if we find that the children were not entitled to a lawyer in the first place do we then need to consider whether six-year-old Dwayne became entitled to a lawyer when his wishes conflicted with the GAL's assessment.

■ R.C. 2151.352 governs the entitlement to appointed counsel in juvenile proceedings and states that a lawyer "must be provided for a child not represented by his parent, guardian, or custodian." Pursuant to the definitions of R.C. 2151.011(B)(16), the children's GAL does not qualify as their "guardian," as she is not authorized to "exercise parental rights" over the children. Therefore,

whatever representation the GAL might have provided has no bearing on whether the children were entitled to a lawyer. Furthermore, neither Clark, McKinney, nor Newell could be considered as representing the children here; there should be no dispute that they and their lawyers represented their own interests in this proceeding. Finally, although CCDCFS is properly considered the children's "custodian" under R.C. 2151.011(B)(11), its prosecution of the permanent custody complaint cannot be considered a direct representation of the children as contemplated by R.C. 2151.352, because CCDCFS sought permanent custody and argued solely for that result. The children were not otherwise represented in the proceedings and R.C. 2151.352 required appointment of counsel to represent them. *In re Janie M.* (1999), 131 Ohio App.3d 637, 639, 723 N.E.2d 191, 192–193; *State ex rel. Asberry v. Payne* (1998), 82 Ohio St.3d 44, 48, 693 N.E.2d 794, 798.

Because we find that the children were entitled to legal representation and did not receive it, we need not decide whether the asserted conflict between the GAL's recommendation and Dwayne's wishes entitled him to such representation. Certainly an issue would arise concerning the need to appoint a separate attorney for a six-year-old whose desires conflict with an adult attorney/GAL's assessment of his interests, and we recognize that the Court of Appeals for Lucas County found that a GAL's conflict with the wishes of an eight-year-old entitled the child to the appointment of a separate attorney. *Smith, supra.* This issue should be raised and addressed if, in further proceedings, the trial judge considers appointing the current GAL as the children's lawyer.

Although the dissent's argument is somewhat conflated, we do not read it to deny the children's plain statutory right to legal representation. Instead, the dissent here appears to agree with the dissenting judge in *Duncan/Walker,* claiming that, absent objection, an appointment as GAL also constitutes an appointment to act as the children's attorney. Not only do we reject this position in favor of the majority opinion in *Duncan/Walker,* we note that the GAL in this case did not act as the children's attorney, because she failed to appear for the dispositional hearing, and the trial judge did not consider her to be so acting because he considered her presence at the hearing unnecessary. We find the third assignment of error well taken.

Clark's second and fourth assignments of error state:

"II. By conducting the dispositional hearing in the absence of the guardian ad litem, the trial court abused its discretion and committed reversible error."

"IV. By committing Destiny Clark to state custody with no showing that her natural father could not safely care for her, the trial court violated her parents' state and federal due process guarantees, deprived her of an essential and

fundamental liberty interest, and defeated a guiding purpose of Chapter 2151 of the Ohio Revised Code."

Because of our decision concerning the third assignment of error, Clark's arguments in these assignments of error are moot. App.R. 12(A).

Judgment reversed, temporary custody reinstated, and cause remanded for proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

BLACKMON, J., concurs.

SPELLACY, P.J., concurs in part and dissents in part.

LEO M. SPELLACY, P.J., concurring in part and dissenting in part. .

I concur with the majority's judgment and analysis of the first assignment of error. As for the third assignment of error, I agree that the permanent custody order regarding Dwayne should be reversed based upon the direct conflict between the guardian *ad litem*'s recommendation and the expressed wishes of Dwayne. However, I must respectfully dissent from the majority's reversal of the permanent custody order regarding Dawhon and Destiny. The majority apparently opines that the juvenile court is required to appoint a separate counsel for the children even where there is no direct conflict between the guardian *ad litem*'s recommendation and the desire of the children.

The majority relies on a line of cases from the Fifth and Sixth Appellate Districts.[2] However, these cases involve conflicts of interest. See *In re Smith* (1991), 77 Ohio App.3d 1, 601 N.E.2d 45 (the guardian *ad litem* also acted as attorney for the children, and the guardian's recommendation conflicted with the expressed desires of the children); *In re Janie M.* (1999), 131 Ohio App.3d 637, 723 N.E.2d 191 ("At the time of the initial hearing, the magistrate was aware that Tyler's wishes were clearly different from those of the guardian. Therefore, we conclude that the court erred in not appointing counsel to represent Tyler.").

Absent a direct conflict between the recommendation of the guardian *ad litem* and the expressed wishes of the children, Ohio courts traditionally have not required a separate appointment of counsel for children in custody proceedings.

---

**2.** The majority also cited *State ex rel Asberry v. Payne* (1998), 82 Ohio St.3d 44, 693 N.E.2d 794. However, *Asberry* is inapposite to the facts of this case. In *Asberry*, the Supreme Court of Ohio held that a *child's maternal grandmother* had a clear legal right to appointment of counsel in the juvenile court's review of her custody petition.

As noted in the dissent to *In re Duncan/Walker Children* (1996), 109 Ohio App.3d 841, 847, 673 N.E.2d 217, 220:

"Juv.R. 4(C)(1) states that where the guardian *ad litem* is an attorney admitted to practice in this state, the guardian may also serve as counsel to the ward, provided that no conflict between the roles exists. It appears to be the common practice of the trial court to allow a guardian *ad litem* who is also an attorney to serve as counsel for the ward at various stages of the proceeding without a separate entry of appointment. I find that the trial court's acquiescence in (if not encouragement of) the guardian *ad litem*'s participation as attorney for the ward constitutes a de facto appointment. Should a conflict between the two roles become evident to either the guardian *ad litem* or the trial court at any stage, Juv.R. 4(C)(2) specifically provides for the appointment of a new guardian *ad litem*. Though I would concede that a formalized entry reflecting dual appointment might be the better approach, I do not find the de facto appointment procedure utilized by the trial court in the case *sub judice* to constitute error as a matter of law, let alone reversible error as found by the majority."

Based upon the foregoing, I would affirm the order granting permanent custody of Dawhon and Destiny to CCDCFS.