OPINION
{¶ 1} In this accelerated calendar case, appellant, Renee Borntreger, appeals from judgments entered by the Juvenile Division of the Geauga County Court of Common Pleas. On May 23, 2001, the trial court denied appellant's motion to withdraw her plea of true. The court's judgment entry of August 6, 2001, was the final disposition of the case and ordered appellee, Geauga County Job and Family Services, to continue its protective supervision of the children.
 {¶ 2} Appellant is married to Keith Borntreger. The family has four children: Samantha, Alyshia, Anthony, and Calvin. Appellant is the stepmother of the three older children: Samantha, Alyshia, and Anthony, who were born during Keith's previous marriage. Calvin was an infant during these proceedings and is the natural child of Keith and Renee.
 {¶ 3} Anthony was having behavioral problems in school. These problems occurred over the months proceeding the alleged incident at issue in this case. Eventually, appellant punished Anthony for his behavior by spanking him with a wooden paddle. The following day, Anthony's teacher noticed bruises on Anthony and sent him to see the school nurse. School officials then referred the matter to appellee.
 {¶ 4} On May 9, 2001, immediately after receiving the case, appellee was granted emergency temporary custody of Anthony and Calvin. Appellee thought Calvin, only six months old at the time, would be unable to protect himself from potential abuse. Anthony and Calvin were placed with their paternal grandparents. The following day there was an initial hearing, where the court ended appellee's temporary custody of Calvin. Appellee retained temporary custody of Anthony until June 20, 2001, when the court returned custody to appellant and Keith Borntreger, while ordering appellee to have protective supervision of him.
 {¶ 5} The initial complaint alleged that Anthony was "severely beaten" and contained a section alleging neglect. The wording of this complaint was amended to allege Anthony was "repeatedly struck," and the neglect portion was deleted. Appellant then pled "true" to the amended charges against her.
 {¶ 6} Appellant appeared at the initial hearing without an attorney. The court asked appellant if she wished to proceed or retain an attorney. Appellant stated she wished to proceed.
 {¶ 7} Anthony was appointed a non-attorney guardian ad litem after the initial hearing. The court never appointed an attorney for Anthony at any time during these proceedings.
 {¶ 8} Eleven days after the initial hearing, appellant obtained Attorney Robert Zulandt to represent her in this matter. That same day, Mr. Zulandt filed a motion to withdraw appellant's plea. The trial court denied this motion without a hearing.
 {¶ 9} Before addressing appellant's assigned errors, we will first address whether this court has jurisdiction to hear this appeal. Although not raised by the parties, there is a concern as to whether the judgments appealed from constitute final appealable orders.
 {¶ 10} The trial court issued four critical judgment entries that are at issue in this case. Those judgment entries are (1) May 18, 2001 — the trial court awarded temporary custody of Anthony to appellee and ordered protective supervision of the remaining children, both on a preadjudicatory interim basis. The court also set the adjudicatory hearing for June 18, 2001. (2) May 23, 2001 — the trial court denied appellant's motion to withdraw her true plea. (3) June 20, 2001 — the trial court adjudicated Anthony abused and adjudicated all of the children dependent. The trial court suspended appellee's temporary custody of Anthony and ordered all four children to be placed under the protective supervision of appellee on a predispositional interim basis. The court also set the dispositional hearing for July 30, 2001. (4) August 6, 2001, the trial court continued appellee's protective supervision of the children and adopted appellee's case plan. The court also set the date of May 9, 2002, for the annual court review hearing.
 {¶ 11} Appellant's notice of appeal was filed on September 4, 2001, within thirty days of the trial court's August 6, 2002 judgment entry. The notice of appeal indicated that appellant was also appealing from the May 23, 2001 judgment entry. For the following reasons, both of these judgments are properly appealed to this court.
 {¶ 12} The May 23, 2001 judgment is a not a final appealable order. The Supreme Court of Ohio has held that a presentence order of a trial court overruling a defendant's motion for leave to withdraw his plea is not a final appealable order.[1] The court noted that "if the overruling of the motion is not a judgment or final order disposing of the cause in the trial court, the appeal at this time is premature."[2]
 {¶ 13} Here, the trial court denied appellant's motion to withdraw her true plea. Although this is not a criminal case, we hold that the same rationale should apply. Essentially, appellant's motion to withdraw her plea was a "presentence" motion, as there remained matters before the trial court that had not been disposed of. Therefore, the May 21, 2001 judgment entry denying appellant's motion to withdraw her true plea was not a final appealable order.
 {¶ 14} The next three judgment entries all involve the granting, continuing, or terminating of temporary custody or protective supervision. In juvenile proceedings such as this, the Supreme Court of Ohio has held:
 {¶ 15} "An adjudication by a juvenile court that a child is `neglected' or `dependent' as defined in R.C. Chapter 2151 followed by a disposition awarding temporary custody to a public children services agency pursuant to R.C. 2151.353(A)(2) constitutes a `final order' within the meaning of R.C. 2505.02 and is appealable to the court of appeals pursuant to R.C. 2501.02."[3]
 {¶ 16} The May 18, 2001 judgment entry does not contain an adjudication. It does contain a grant of temporary custody on a preadjudicatory interim basis. However, since there is no adjudication, this judgment entry is not a final appellate order pursuant to the Supreme Court of Ohio's holding in Murray.
 {¶ 17} The trial court issued a judgment entry on June 20, 2001. In this judgment entry, the court adjudicated Anthony to be an abused child and adjudicated all four of the children to be dependent children.
 {¶ 18} Although the trial court made an adjudication in the June 20, 2001 judgment entry, it did not rule on disposition. The court ordered protective supervision of the children on a predispositional
interim basis. Also, the case plan was adopted and "made binding on the parties on a predispositional interim basis." These are just some of the many instances in this judgment entry where the court acted on a predispositional interim basis. Finally, the trial court ordered that the matter would come for a dispositional hearing on July 30, 2001. All of these references indicate the trial court's clear intention was that the June 20, 2001 judgment entry was not a disposition. Rather, the court intended to address the disposition of the case at the hearing on July 30, 2001.
 {¶ 19} The trial court did enter an adjudication in its June 20, 2001 entry. However, the language of the judgment entry clearly indicates that it was interlocutory in nature and that there was no disposition. Rather, the court made it clear that disposition would occur at the July 30th hearing. As there was no disposition, this judgment entry was not a final appealable order.
 {¶ 20} Even if we were to hold that either the May 18, 2001 or June 20, 2001 judgment entry was a final appealable order, this would not bar the instant appeal. Appellant was not required to file her notice of appeal within thirty days of such order if, in fact, it was final. App.R. 4(B)(5) exempts certain judgments from the thirty-day filing requirement of App.R. 4(A). App.R. 4(B)(5) states:
 {¶ 21} "Partial final judgment or order. If an appeal is permitted from a judgment or order entered in a case in which the trial court has not disposed of all claims as to all parties, other than a judgment or order entered under Civ.R. 54(B), a party may file a notice of appeal within thirty days of entry of the judgment or order appealed or the judgment or order that disposes of the remaining claims. Division (A) of this rule applies to a judgment or order entered under Civ.R. 54(B)."
 {¶ 22} This court has held that App.R. 4(B)(5) gives an appellant the decision to initially appeal a judgment that affects a substantial right or to wait for the final disposition of the case.[4] As stated by the Third District, "even though the court's judgment was a final appealable order, it was a `partial final judgment' that is appealable alternatively thirty days after the court renders a final order on all issues in the case."[5]
 {¶ 23} Further, the staff notes to App.R. 4(B)(5) help explain the reasoning for giving the party an option to file an instant appeal or to wait until the case is complete. The staff notes state, in part:
 {¶ 24} "After studying the matter, the Committee concluded that a party should have the option to appeal a partial final judgment or order either immediately or at the end of the entire case. Without that option, a party who wants to appeal a partial final judgment or order and who is in doubt about whether it meets the test of finality set forth inAmato[6 will be forced to take an immediate appeal to protect its right to appeal. It will then be up to the court of appeals to decide whether the partial judgment or order meets the test of Amato. Many unnecessary appeals may result. On the other hand, a party who is unaware of the Amato and Dayton Women's Health Care Center[7 decisions may not seek to appeal a partial final judgment or order until the final judgment is entered, and that is too late. Neither result is desirable. For this reason, the rule is amended to give the party the option to appeal immediately or at the end of the case."
 {¶ 25} App.R. 4(B)(5) would most certainly be applicable to juvenile cases such as this. The Murray holding essentially carved out an exception, which allowed a parent to immediately appeal the granting of temporary custody following adjudication. The court's rationale was that a decision which removed children from the home effected a substantial right.[8] We believe that the Supreme Court of Ohio's intention was to be lenient in allowing parents who have had children removed from their home the right to immediately appeal. The decision was in favor of a parent's right to bring an appeal. We do not believe that it was the court's intention to preclude an appeal if, as in this case, the appeal was not brought within thirty days of an arguably "final" order. This is especially true in a case such as this where the final order was entered within two months of the interim order.
 {¶ 26} Finally, we will address whether the final judgment of August 6, 2001, was a final appealable order. This was the first order where there had been both an adjudication and a disposition in the case. Thus, pursuant to Murray, this was a final appealable order.
 {¶ 27} Moreover, this was the judgment entry that effectively disposed of all the claims of the case. The entry stated that the next proceeding in the case would be the annual court review the following May. A review of the record indicates that the court filed a variety of judgment entries in this case. Except for the August entry, every entry clearly stated that there would be another hearing no more than forty days later. We consider it more than reasonable that a prudent attorney would wait for the termination of the case (the August 6, 2001 judgment entry) to file an appeal.
 {¶ 28} Therefore, the August 6, 2002 judgment entry was a final appealable order. Appellant properly appealed this judgment. Moreover, since the May 23, 2001 judgment entry was not a final appealable order but, rather, an interlocutory order, appellant properly appealed this judgment after the termination of the case.[9]
 {¶ 29} We will now address the merits of the case. Appellant raises three assignments of error. The first assignment of error is:
 {¶ 30} "The trial court failed to properly advise the appellant of her rights, the substance and nature of the complaint, or the consequences of her plea, and failed to comply with Juvenile Rule 29, thereby violating appellant's due process rights."
 {¶ 31} Appellant claims her rights were violated because the trial court did not properly advise her of her rights. We agree.
 {¶ 32} The First Appellant District has held there must be substantial compliance with Juv.R. 29.[10] The court's rationale was that "[t]he right of a parent to raise his or her child is considered an `essential' and `basic' civil right."[11] The Eighth Appellate District has also held that substantial compliance is required for Juv.R. 29.[12]
 {¶ 33} Rule 29 of the Rules of Juvenile Procedure outlines certain responsibilities of the court at a juvenile hearing such as this:
 {¶ 34} "(B) Advisement and findings at the commencement of the hearing.
 {¶ 35} "At the beginning of the hearing, the court shall do all of the following:
 {¶ 36} "(1) Ascertain whether notice requirements have been complied with and, if not, whether the affected parties waived compliance;
 {¶ 37} "(2) Inform the parties of the substance of the complaint, the purpose of the hearing, and possible consequences of the hearing, * * *;
 {¶ 38} "(3) Inform unrepresented parties of their right to counsel and determine if those parties are waiving their right to counsel;
 {¶ 39} "(4) Appoint counsel for an unrepresented party under Juv.R. 4(A) who does not waive the right to counsel;
 {¶ 40} "(5) Inform any unrepresented party who waives the right to counsel of the right: to obtain counsel at any stage of the proceedings, to remain silent, to offer evidence, to cross-examine witnesses, and, upon request, to have a record of all proceedings made, at public expense if indigent."[13]
 {¶ 41} The record shows that appellant was not advised of any of the rights set forth in Juv.R. 29(B)(5) during the initial hearing. Although the court initially discussed the right to counsel, the court did not inform appellant that she could obtain counsel at any stage of the proceedings. The trial court did not inform appellant of her right to remain silent, to cross-examine witnesses, or to offer evidence. Likewise, the court did not inform appellant that she could request to have a record of the proceedings made at public expense if she was indigent. The court was required to inform appellant of these rights at the initial hearing when appellant waived the right to counsel.[14]
 {¶ 42} The court was also required to address appellant and make certain determinations before accepting an admission. These requirements are set forth in Juv.R. 29(D), which states, in relevant part:
 {¶ 43} "(D) Initial procedure upon entry of an admission.
 {¶ 44} "The court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following:
 {¶ 45} "(1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission.
 {¶ 46} "(2) The party understands that by entering an admission the party is waiving the right to challenge witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing." (Emphasis added.)
 {¶ 47} The court explained the nature of the complaint and then asked appellant if she understood what had been discussed. The record indicated no audible response to the court's inquiry. Therefore, there is no evidence in the record that the court determined that appellant understood the nature of the complaint as required by Juv.R. 29(D)(1).
 {¶ 48} The record reveals that appellant was never informed of the rights set forth in Juv.R. 29(D)(2), including: the right to remain silent, the right to challenge witnesses and evidence, and the right to introduce evidence at the later hearing. Since she was a lay person and was not advised of these rights, she would have had no reasonable way to understand that she was waiving them.
 {¶ 49} This court has previously held that "Juv.R. 29(D) clearly mandates that the trial court must comply with both Juv.R. 29(D)(1) and (2)."[15] Although Onion involved a delinquency hearing, Juv.R. 29 is no less applicable in a dependency proceeding than it is in a delinquency proceeding.[16] Juv.R. 29(D)(2) makes no distinction between deliquency hearings and neglect, dependency, or abuse proceedings. Juv.R. 29(D) states that the court shall not accept an admission without complying with subsections (1) and (2). The trial court did not comply with subsection (D)(2) and, therefore, was not permitted to accept appellant's true plea.
 {¶ 50} The trial court did not substantially comply with the requirements of Juv.R. 29. Specifically, the court did not even minimally comply with the requirements of Juv.R. 29(B)(5) or Juv.R. 29(D)(2). For these reasons, appellant's first assignment of error has merit.
 {¶ 51} Appellant's second assignment of error is:
 {¶ 52} "The trial court abused its discretion in not allowing appellant to withdraw her plea."
 {¶ 53} After retaining counsel, appellant filed a motion to withdraw her "true" plea. This motion was filed only eleven days after the true plea was entered. However, the trial court denied the motion without a hearing.
 {¶ 54} Our research has not revealed any Ohio case law addressing the issue of the withdrawal of a true plea in an abuse/dependency/neglect action. The Supreme Court of Ohio has held that "[t]he decision to grant or deny a presentence motion to withdraw a guilty plea is within the sound discretion of the trial court."[17] The court further held that "[a] trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea."[18]
 {¶ 55} Although the Xie case involved withdrawing a guilty plea in a criminal case, the concept should be the same when applied to Juv.R. 29, based on the importance of parental rights as noted by the Supreme Court of Ohio in Murray.[19]
 {¶ 56} Appellant's true plea is equivalent to a presentence motion to withdraw a guilty plea. This is because the motion was filed before the final disposition of the case. Sentencing is usually the final disposition of a criminal case.[20] Moreover, one reason in support of the liberal approach to be taken regarding a presentence motion to withdraw a guilty plea, is that the inconvenience to the court is relatively slight.[21] Here, the burden on the court to conduct a hearing regarding appellant's motion to withdraw her true plea was minimal, because the case was in its very beginning stages and the court had only conducted the initial hearing on May 10, 2001. There had not been an adjudicatory hearing, nor had there been a dispositional hearing. The trial court's actions in denying appellant's motion to withdraw her true plea are compounded by the fact that appellant was not advised of her rights at the initial hearing pursuant to Juv.R. 29. As stated in our analysis of appellant's first assignment of error, the trial court was prohibited from accepting an admission from appellant without meeting both of the requirements of Juv.R. 29(D). The trial court did not meet any of the requirements of Juv.R. 29(D)(2); i.e., the trial court did not personally address appellant to determine that she understood she was (1) waiving the right to challenge witnesses, (2) waiving the right to challenge evidence, (3) waiving the right to remain silent, or (4) waiving the right to introduce evidence at the adjudicatory hearing. The trial court erred in accepting appellant's true plea, thus, the court erred by denying the motion to withdraw the plea without conducting a hearing.
 {¶ 57} The trial court abused its discretion when it denied appellant's motion to withdraw her plea of "true" without conducting a hearing. Appellant's second assignment of error has merit.
 {¶ 58} Appellant's third assignment of error is:
 {¶ 59} "The trial court's adjudication and disposition of this case was invalid in that no attorney was appointed for the child, Anthony, alleged to be abused."
 {¶ 60} Anthony is not the appealing party in this case. Therefore, we will first address whether appellant has standing to raise an alleged error that was committed against Anthony.
 {¶ 61} "An appealing party may complain of an error committed against a nonappealing party when the error is prejudicial to the rights of the appellant. State v. Ward (Sept. 21, 1988), [9th Dist. No. 13462], 1988 WL 99182. In the case at bar the interests of appellant parents and at least five of the Smith children are aligned. All seek reunification of the family. Thus any error prejudicial to the children's interest in reunification is similarly prejudicial to the parents' interest. We find that the parents, appellants herein, have standing to raise the issue as an assignment of error. This is especially true in this instance where it is asserted that the minor children were denied proper legal counsel."[22]
 {¶ 62} Appellant is Anthony's stepmother. The record reveals that she took an extremely active role in all of the children's lives. Her pastor stated that she has made extraordinary efforts to blend this family. The record also reveals that appellant was a primary caregiver to the children and that she regularly corresponded with Anthony's teacher concerning his behavioral problems. Appellant indicated that she had a strong desire to have her family reunited. It is arguable that Anthony also had an interest in his family's reunification. Therefore, as the court held in Smith, since appellant's and Anthony's interests were aligned, any error that was prejudicial to Anthony was similarly prejudicial to appellant. Accordingly, appellant has standing to raise this assignment of error.
 {¶ 63} Anthony was never appointed counsel at any time throughout these proceedings. He should have been appointed counsel to represent his interests from the very beginning of the proceedings at the initial hearing.
 {¶ 64} Juv.R. 4(A) provides:
 {¶ 65} "Every party shall have the right to be represented by counsel and every child, parent, custodian, or other person in loco parentis the right to appointed counsel if indigent. These rights shall arise when a person becomes a party to a juvenile court proceeding. When the complaint alleges that a child is an abused child, the court must appoint an attorney to represent the interests of the child. This rule shall not be construed to provide for a right to counsel in cases which that right is not otherwise provided for by constitution or statute." (Emphasis added.)
 {¶ 66} This rule seems to simply state that an abused child is entitled to an attorney. In fact, the language states that the courtmust appoint an attorney for a child alleged to be abused. The rule then seems to retract any rights to counsel it provides with the limiting language of the final sentence, that "[t]his rule shall not be construed to provide for the right to counsel in cases which that right is not otherwise provided for by constitution or statute."
 {¶ 67} We can find no statutory provision that expressly grants the right to an attorney to a child alleged to be abused, the way Juv.R. 4(A) purports to. We do find R.C. 2151.352 to be applicable. At the time the complaint was filed in this case, R.C. 2141.352 stated, in relevant part:
 {¶ 68} "A child, his parents, custodian, or other person in loco parentis of such child is entitled to representation by legal counsel at all stages of the proceedings and if, as an indigent person, he is unable to employ counsel, to have counsel provided for him pursuant to Chapter 120 of the Revised Code."[23]
 {¶ 69} In addition, the limiting language of the last sentence of Juv.R. 4(A) seems to be applicable to the beginning of the rule, where the right to counsel is conveyed in broad, general terms. However, the language of the third sentence is very straightforward, stating that the court must appoint counsel for an alleged abused child.
 {¶ 70} Other districts have held that the right to counsel attaches to children who are alleged neglected or dependent. Specifically, the Eighth District has held that a six-year-old who was alleged to be neglected was entitled to counsel.[24] The Sixth District has similarly held that alleged neglected and dependent children are entitled to an attorney.[25] Courts have held that the initial language of Juv.R. 4(A) "every party" and "every child" provide the right to counsel to children in cases where the child is alleged to be neglected and dependent.[26]
 {¶ 71} The same rationale could be applied to a child such as Anthony, who is alleged to be abused. An alleged abused child is a child, as well as a party to the proceeding, and, thus, is entitled to an attorney under the initial language of Juv.R. 4(A). The right to counsel for an alleged abused child is even more apparent due to the specific and mandatory language of the third sentence of Juv.R. 4(A), that the court must appoint an attorney to represent the interests of the alleged abused child.
 {¶ 72} The Supreme Court of Ohio has held that, "under the plain language of R.C. 2151.352, indigent children, parents, or other personsin loco parentis are entitled to counsel in all juvenile proceedings. * * * This result is consistent with the holdings of the Third, Fourth, Sixth, Ninth, and Twelfth Districts, as well as the interpretation of the Attorney General."[27]
 {¶ 73} The right to counsel attached when the complaint was filed.[28] The Sixth Appellate District has held that the right to counsel attached when the children were first removed from the home and that the children should have been represented at the first court appearance.[29] The complaint alleged that Anthony was an abused child. As an alleged abused child, Anthony should have been appointed counsel to represent his interests from the very beginning of the initial hearing.
 {¶ 74} Appellee cites this court's decision in Bailey in support of its argument that Juv.R. 4(C) and R.C. 2151.281(H) contemplate the appointment of a guardian ad litem who is not an attorney.[30] The argument in Bailey was that the court should have appointed an attorney guardian ad litem rather than a CASA guardian ad litem. The issue was not whether the court should have appointed counsel for the children.[31]
In addition, the children in Bailey were not alleged to be abused, so the mandatory requirement of Juv.R. 4(A) relating to alleged abused children was not applicable.[32] Finally, in Byram, the case this court cited inBailey, the alleged abused child was represented by counsel, and the court merely held that guardian ad litem did not have to be an attorney.[33]
 {¶ 75} Both R.C. 2151.281(H) and Juv.R. 4(C) contemplate an attorney serving both as guardian ad litem and as counsel for the ward. They both prohibit this dual appointment if there is a conflict between the attorney's roles as guardian ad litem and counsel for the ward. Courts have recognized the distinction between the roles of guardian ad litem and counsel for the ward. A guardian ad litem's duty is to investigate the ward's situation and ask the court to do what the guardian believes is in the ward's best interest.[34] However, the counsel for the child has a duty to zealously represent their client and to act as a spokesperson for the child's interest.[35] Therefore, provided there is no conflict, an attorney could serve as both guardian ad litem and counsel for the child. Obviously, a non-attorney guardian at litem, as was appointed in this case, could never serve as counsel for the child.
 {¶ 76} Anthony was an alleged abused child and, as such, was entitled to counsel pursuant to R.C. 2151.352 and the express language of Juv.R. 4(A). The trial court should have appointed an attorney for Anthony. Appellant's third assignment of error has merit.
 {¶ 77} The compounded errors of the trial court necessitate a reversal. A parent's children, including an infant, were taken from her home. The following day, she was ordered to appear in court to answer charges of abuse and neglect. She was not properly advised of her rights. The trial court improperly accepted her true plea. Then, only eleven days later and after retaining an attorney, she attempted to withdraw her true plea. The trial court denied this motion, without so much as a hearing. Even more problematic in this case is that Anthony, the alleged abuse child, was never appointed an attorney, even though the Juvenile Rules expressly state that an appointment was mandatory.
 {¶ 78} Based on the foregoing, the judgment of the trial court is reversed and this case is remanded for further proceedings.
ROBERT A. NADER, J., concurs in judgment only, JUDITH A. CHRISTLEY, J., dissents with Dissenting Opinion.
[1] State v. Chamberlain (1964), 177 Ohio St. 104, syllabus.
[2] Id. at 105.
[3] In re Murray (1990), 52 Ohio St.3d 155, syllabus.
[4] Dragojevic-Wiczen v. Wiczen (1995), 101 Ohio App.3d 152, 154.
[5] In re Eblin (1998), 126 Ohio App.3d 774, 776.
[6] Amato v. General Motors Corp. (1981), 67 Ohio St.2d 253.
[7] Dayton Women's Health Ctr. v. Enix (1990), 52 Ohio St.3d 67.
[8] In re Murray, 52 Ohio St.3d at 157.
[9] See, generally, Balson v. Dodds (1980), 62 Ohio St.2d 287, paragraph one of the syllabus; Cincinnati Gas Electric Co. v. Pope
(1978), 54 Ohio St.2d 12, syllabus.
[10] In re Etter (1998), 134 Ohio App.3d 484, 489.
[11] Id., citing In re Murray, 52 Ohio St.3d at 157, quoting Stanleyv. Illinios (1972), 405 U.S. 645, 651
[12] In re Clark (2001), 141 Ohio App.3d 55, 59.
[13] Juv.R. 29(B).
[14] See In re Atkins (Mar. 7, 2001), 7th Dist. Nos. 705 
706, 2001 Ohio App. LEXIS 1099, at *11.
[15] (Emphasis in original.) In re Onion (1998), 128 Ohio App.3d 498,501.
[16] In re Etter, 134 Ohio App.3d at 489.
[17] State v. Xie (1992), 62 Ohio St.3d 521, paragraph two of the syllabus.
[18] Id. at paragraph one of the syllabus.
[19] In re Murray, 52 Ohio St.3d at 177.
[20] See State v. Chamberlain, 177 Ohio St. at 105, quoting Berman v.United States (1937), 302 U.S. 211, 212.
[21] (Citations omitted.) Eastlake v. DeNiro (1984), 21 Ohio App.3d 102,104.
[22] In re Smith (1991), 77 Ohio App.3d 1, 13.
[23] {¶ a} R.C. 2151.352 was amended effective January 1, 2002. The statute now reads:
 {¶ b} "A child or the child's parents, custodian, or person in loco parentis of such child is entitled to representation by legal counsel at all stages of the proceedings under this chapter or Chapter 2152. of the Revised Code and if, as an indigent person, any such person is unable to employ counsel, to have counsel provided for the person pursuant to Chapter 120."
[24] In re Clark (2000), 141 Ohio App.3d 55.
[25] In re Stacey S. (1999), 136 Ohio App.3d 503.
[26] Id.; In re Moody (June 28, 2001), 4th Dist. Nos. 00CA5 
00CA6, 2001 Ohio App. LEXIS 3101.
[27] (Citations omitted). State ex rel. Asberry v. Payne (1998),82 Ohio St.3d 44, 48.
[28] In re Stacey S., 136 Ohio App.3d at 513.
[29] Id.
[30] In re Bailey (July 20, 2001), 11th Dist. No. 2001-G-2337, 2001 Ohio App. LEXIS 3294, at *16.
[31] Id.
[32] Id. at *1.
[33] Byram v. Lucas Cty. Children Services Bd. (Nov. 22, 1991), 6th Dist. No. L-91-179, 1991 Ohio App. LEXIS 5584, at *14-15.
[34] In re Stacey S., 136 Ohio App.3d at 514.
[35] Id.