OPINION
{¶ 1} This appeal is taken from a final judgment of the Juvenile Division of the Geauga County Court of Common Pleas. Dakota Williams ("appellant") appeals from the trial court's judgment terminating her parental rights and granting permanent custody of her minor children, Malcolm and Shaquille Williams, to the Geauga County Job and Family Services ("GCJFS").
 {¶ 2} On April 14, 2000, GCJFS filed a complaint alleging that Malcolm (d.o.b. May 22, 1996) was a neglected and dependent child. The complaint alleged appellant had moved four times in the past year, thereby providing the child with an unstable home environment. Further, GCJFS alleged Malcolm had observed arguments and physical disputes between his parents, affecting the child's own behavior. GCJFS requested protective supervision and/or temporary custody of Malcolm. On April 28, 2000, appellant entered a plea of true to the complaint. On May 9, 2000, the trial court appointed a guardian ad litem for Malcolm.
 {¶ 3} On June 16, 2000, GCJFS filed a complaint alleging that Shaquille (d.o.b. May 8, 2000) was a neglected and dependent child. The court appointed a guardian ad litem for Shaquille. On July 11, 2000, the trial court granted protective supervision of Shaquille to GCJFS after appellant entered a plea of true to the complaint.
 {¶ 4} On June 20, 2000, the trial court adjudicated Malcolm to be a neglected and dependent child and ordered that Malcolm be placed in the temporary custody of GCJFS for placement in foster care. On September 11, 2000, the trial court granted GCJFS protective supervision of Malcolm and Shaquille.
 {¶ 5} On April 17, 2001, the trial court issued a judgment entry regarding a review hearing. The court noted appellant continued to struggle with parenting Malcolm. She even expressed an interest in having the child removed from the home. Appellant's ability to parent the children without the assistance of several agencies was questionable. Further, appellant desired to rekindle her relationship with the child's father, who had a history of psychiatric disorders and a criminal record. The court stated appellant was unable to maintain consistent employment due to her irresponsible behavior and was in danger of having the utilities to her home shut off because of nonpayment.
 {¶ 6} On May 31, 2001, a guardian ad litem requested to withdraw after being threatened by appellant. On October 23, 2001, the court, in its judgment entry, found that appellant had abandoned her trailer home and lived in housing subsidized by the Ravenwood Mental Health Center. However, her continued ownership of the trailer prevented her from qualifying for public assistance. There were concerns about the amount of food available for the children in her home. Appellant had not fulfilled the requirements for Malcolm to attend school. There were concerns about a cigarette burn Malcolm received. Appellant did not comply with attendance at court-ordered counseling. The court found it in Malcolm's best interest to award temporary custody to GCJFS and place the child in foster care.
 {¶ 7} On March 4, 2002, GCJFS filed a motion for permanent custody of both children. On March 28, 2002, the trial court issued its judgment entry regarding a review hearing. The court found appellant had recommitted herself to going to counseling and had made progress in dealing with her personal issues. Appellant had maintained employment and stable housing over the recent months. Appellant had terminated her relationship with the child's father and regularly visited her children, exhibiting a strong bond with them.
 {¶ 8} In May of 2002, the trial court held a four-day hearing on the motion of GCJFS for permanent custody. There was evidence appellant had rectified some of the behavior that had led to the children's removal in the last six months or so prior to the hearing. Several witnesses questioned whether appellant could maintain this behavior, as consistency had been one of her major problems in the past. Also, there was evidence the stress of maintaining steady employment and housing while caring for the children was too much for appellant and led to episodes of depression.
 {¶ 9} There was evidence Malcolm had repeatedly maintained he wished to remain with appellant. His behavior regressed and became more aggressive upon his removal in October of 2001. During supervised visitation, Malcolm often did not want to let appellant out of his sight. A strong bond between the children and their mother was not in dispute below.
 {¶ 10} On June 5, 2002, the trial court granted GCJFS's motion for permanent custody. The court found that appellant's mental health disorder and reoccurring depression was the greatest barrier to her ability to successfully parent her children. Malcolm is a difficult child to parent due to the emotional harm he suffered while in his parents' care. Shaquille suffered significant speech and language delays but has made progress since his removal from appellant. The court noted appellant had difficulty maintaining steady employment and housing, although she had recently obtained subsidized housing through Ravenwood Mental Health Center. The court stated appellant had not been able to successfully parent her children in the past, having difficulty with solving even simple problems regarding the children's care. The court found, by clear and convincing evidence, that it was in the best interest of Malcolm and Shaquille to grant the motion for permanent custody.
 {¶ 11} Appellant assigns the following errors for review:
 {¶ 12} "[1.] The trial court erred by failing to appoint counsel for Malcolm and Shaquille when there was a conflict between their interests and those expressed by the Guardian ad Litem.
 {¶ 13} "[2] The trial court erred in determining that granting permanent custody to the county was in the best interest of the child.
 {¶ 14} "[3] The Juvenile Court erred in finding that the child could not be placed with Ms. Williams within a reasonable time and should not be placed with her, when that finding was against the manifest weight of the evidence.
 {¶ 15} "[4] The Juvenile Judge erred by failing to recuse himself in this matter when there was repeated testimony about appellant's hostilities and threats toward the Judge.
 {¶ 16} "[5] The appellant was denied the effective assistance of counsel when her attorney failed to request that counsel be appointed for the minor children and failed to request a mistrial."
 {¶ 17} In her first assignment of error, appellant asserts the trial court erred by failing to appoint counsel to represent the children in the proceedings below. Appellant argues that the guardian ad litem did not represent the interests of the children. Appellant maintains that appointment of counsel for the children was necessary because of the strong bond between herself and the children as well as Malcolm's often expressed wish for reunification. Appellant points out that the guardian ad litem advocated for the grant of permanent custody, contrary to Malcolm's desire to return to his mother.
 {¶ 18} Every party to juvenile proceedings has the right to be represented by counsel. Juv.R. 4(A). The child who is the subject of the proceeding is considered a party and, therefore, entitled to legal representation. Juv.R. 2(X). Indigent children are entitled to appointed counsel at all juvenile proceedings. R.C. 2151.352; State ex rel. Asberryv. Payne (1998), 82 Ohio St.3d 44, 48. It is the trial court's duty to insure that a child's right to counsel in a juvenile proceeding is not violated. See In re Stacey S., 136 Ohio App.3d 503, 1999-Ohio-989. The child's right to counsel attaches when the child is taken into custody pursuant to Juv.R. 6, which includes emergency custody orders. However, the court only is required to appoint counsel to represent the child's interests if there is an allegation of abuse.
 {¶ 19} If a juvenile court determines that a child is entitled to legal representation in addition to a guardian ad litem, the court can appoint an attorney to serve in the dual capacity of appointed counsel and guardian ad litem. A duel appointment is permitted if there is no conflict between the roles. In re Holmes (Feb. 15, 2001), 8th Dist. No. 77785, 2001 Ohio App. LEXIS 549. The separate appointment of counsel is necessary if there is a direct conflict between the recommendation of the guardian ad litem and the expressed wishes of the child. In re Day (Feb. 15, 2001), 10th Dist. No. 00AP-1191, 2001 Ohio App. LEXIS 525. This is because the role of a guardian ad litem is different than that of an attorney. In re Baby Girl Baxter (1985), 17 Ohio St.3d 229, 232. The role of the guardian ad litem is to investigate the child's situation and then ask the court to do what is in the child's best interest, while the role of an attorney is to zealously represent his client's wishes within the bounds of the law. Id. If there is a conflict between these roles, the guardian ad litem may not be the child's attorney.
 {¶ 20} In the instant case, Malcolm consistently expressed a desire to be reunited with appellant. Once, Malcolm told his therapist he would move his house into the woods and live with appellant there if told he could not live with his mother. That same therapist stated Malcolm would be happier with appellant. The guardian ad litem who was appointed was an attorney. However, he was not appointed as an attorney, nor as a duel capacity guardian ad litem, thus, there was no appointment of counsel. None of the parties requested such an appointment. Therefore, the guardian ad litem could not have acted as Malcolm's attorney. The guardian ad litem is to act in the best interests of the child, which can be contrary to the wishes of the child. On the other hand, an attorney must represent his or her client's wishes, irrespective of best interest.
 {¶ 21} We are aware that other appellate courts have found waiver in similar situations. The Fourth District Court of Appeals in In reGraham, 4th Dist. No. 01CA57, 2002-Ohio-4411, 2002 Ohio App. LEXIS 4556, determined that the father waived the issue on appeal because no request for appointment of counsel for the child was made below, when no allegation of abuse was set forth in the complaint. See also, In reBrittany T., 6th Dist. No. L-01-1369, 2001-Ohio-3099, 2001 Ohio App. LEXIS 5781. However, the Fourth District Court of Appeals found error in another case when the trial court failed to appoint counsel because the indigent child had no one else to represent her interests. The court noted that the child's parents, although they had standing to raise the issue, represented their own interests at the hearing even though their interests and the child's, that of reunification, coincided. When a child expresses a repeated desire to be returned to his or parent or parents, then the court should inquire further about the child's wishes to determine if counsel for the child is called for in the case. In reStacey S., supra.
 {¶ 22} The Eighth District Court of Appeals in In re Clark,141 Ohio App.3d 55, 2001-Ohio-4126, held that children were entitled to legal representation in a case where one of the children expressed a strong desire to be returned to his mother at the dispositional hearing. The court did note that an issue existed regarding whether a six-year old child was entitled to separate representation after expressing desires in conflict with the recommendation of the guardian ad litem.
 {¶ 23} We are reluctant to find waiver in a case where a child consistently has expressed a wish to be with a parent. Courts have stated that a child's interests are not represented by his or her parents, even when the parents and child all want reunification. To find waiver would deny that child his or her right to counsel because another party did not raise the issue.
 {¶ 24} This is not to say that every child should be given counsel or that waiver is not appropriate in certain cases. There is a question in this case as to whether six-year old Malcolm has the maturity to understand the proceedings. Arguably, most children of tender years will want to be returned to their parents. A juvenile court need only consider a child's wishes regarding a motion for permanent custody after giving due regard to the child's maturity. R.C. 2151.414(D)(2). Similarly, there is no need to consider the appointment of counsel based upon a child's occasional expression of a wish to be with a parent or because of a statement made by an immature child.
 {¶ 25} Courts must consider each case on the facts presented as no bright-line rule can be imposed regarding what age a child would be considered mature for the purposes of the appointment of legal counsel. Children and circumstances differ to a large degree such that the court must base its determination of whether or not legal counsel should be appointed on its consideration of the child at issue and not whether a certain age must be attained before the right to counsel attaches.
 {¶ 26} Indeed, in most cases, a child of tender years will probably lack the maturity to understand the situation and consequences involved in a permanent custody case. We are not requiring that legal counsel be appointed every time a child states a desire to remain with a parent. However, when a child consistently expresses a desire to be with a parent, then a juvenile court should investigate, giving due regard to the child's maturity and understanding of the proceedings, and make a ruling about whether an attorney should be appointed to represent the child's interest and expressed wishes.
 {¶ 27} The record is replete with evidence that Malcolm wanted to be with appellant. Nevertheless, the guardian ad litem recommended that the motion for permanent custody be granted. The trial court erred by not at least considering Malcolm's level of maturity and whether Malcolm's repeated desire for reunification required the appointment of counsel to represent his interests and then ruling on the issue. Appellant's first assignment of error is well-taken.
 {¶ 28} The disposition of the first assignment of error moots appellant's fifth assignment of error. Based upon the resolution of the first assignment of error, it would be improvident to address the issues raised in appellant's second and third assignments of error at this time. Appellant's fourth assignment of error challenges the trial judge's continued presence in the case due to appellant's threats to "kill" the judge. Appellant contends that evidence regarding her statements were enough to warrant the recusal of the trial judge from the proceedings.
 {¶ 29} Appellant never raised the issue below. An appellate court will not consider any error which a party complaining of a trial court's judgment could have called, but did not call, to the trial court's attention at a time when the alleged error could have been avoided or corrected by the trial court. Stores Realty Co. v. Cleveland (1975),41 Ohio St.2d 41. The assignment of error may be reviewed under the plain error exception to the waiver rule. The plain error doctrine provides for the correction of errors clearly apparent on their face and not prejudicial to the complaining party even though the complaining party failed to object to the error below. Reichert v. Ingersoll (1985),18 Ohio St.3d 220. The plain error doctrine may be utilized in civil cases only with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. Cleveland Elec.Illum. Co. v. Astorhurst Land Co. (1985), 18 Ohio St.3d 268.
 {¶ 30} In Czup v. Czup (Sept. 17, 1999), 11th Dist. No. 98-A-0046, 1999 Ohio App. LEXIS 4324, this court addressed the merits of the trial judge's failure to recuse himself although the issue was not raised in the trial court. We did so to prevent the public's faith and confidence in the judiciary from being undermined. Similarly, the merits of the issue will be addressed herein.
 {¶ 31} One of the attorneys who served as a guardian ad litem testified that appellant admitted to verbally threatening the trial judge. The children's foster mother stated that appellant was not happy with the judge after the children were put in foster care and sometimes said she wanted to kill the judge. Appellant testified she was upset when the children were taken and said she would kill the judge. Appellant explained the remark was made in the privacy of her own home when she was angry, but she did not mean to threaten the judge.
 {¶ 32} It is clear from the entire record that appellant had a history of "venting" by expressing her anger by uttering verbal threats, which were never acted upon. There is nothing in the record showing that the trial court ever felt threatened by appellant's words or that the outcome of the case was determined, or even influenced, by appellant's statements. Appellant has not demonstrated error or any prejudice by the trial judge's continued presence in the case. Appellant's fourth assignment of error is overruled.
 {¶ 33} Based upon the resolution of the first assignment of error, appellant's appeal is found to be with merit. Although the first assignment of error concerned Malcolm, the issues raised at a new hearing obviously would affect Shaquille as well. As such, the award of permanent custody to GCJFS for both children is vacated. The judgment of the Geauga County Court of Common Pleas, Juvenile Division, is reversed and remanded for proceedings consistent with this opinion.
DONALD R. FORD, J., JUDITH A. CHRISTLEY, J., concur.