OPINION
{¶ 1} This is an appeal by Rosalee Alfrey from an order of the Juvenile Court terminating her parental rights with respect to her four minor children. The court also terminated the rights of their father, Appellant's spouse, Christ Alfrey. The court awarded permanent custody of the four children to the Clark County Department of Job and Family Services ("Department") upon its motion.
 {¶ 2} Christ Alfrey did not appeal from the trial court's order. Rosalee Alfrey did, presenting four assignments of error for our review.
 {¶ 3} Upon our initial review of this case we discovered that the juvenile court had awarded permanent custody of the Alfrey children to the Department without making one of the necessary explicit findings that R.C. 2151.353(A)(4) and 2151.414(E) requires: which is that as a result of parental unfitness as demonstrated by the existence of one or more of the factors set out in R.C. 2151.414(E)(1)-(16), "the children cannot be placed with either parent within a reasonable time or should not be placed with either parent." We remanded the case to the Juvenile Court to make this required finding, if the court believed that finding was warranted by the facts. The Juvenile Court has now made the necessary "placement" finding, and this matter is once again before us for resolution of Rosalee Alfrey's assignments of error. We shall address those claims in the order that best facilitates our review.
 THIRD ASSIGNMENT OF ERROR {¶ 4} "The trial court failed to appoint an attorney to represent the children, in violation of Ohio Juvenile Rule 4 and Ohio Revised Code2151.352."
 {¶ 5} The issue presented is whether the juvenile court was required to appoint an attorney to represent the four minor children, or each of them, because their desire to remain with their mother was in conflict with the recommendation of the guardian-ad-litem that permanent custody of them should be awarded to the Department.
 {¶ 6} The Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees a right to representation by counsel in juvenile delinquency proceedings. In re Gault (1967),381 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527. The right also extends to juvenile proceedings on requests to terminate parental rights, where "[a] parent's interest in the accuracy and justice of the decision to terminate his or her parental status is . . . a commanding one." Lassiter v.Department of Social Services (1981), 452 U.S. 18, 27, 101 S.Ct. 2153,68 L.Ed.2d 640, 650.
 {¶ 7} "Ohio, through R.C. 2151.352, provides a statutory right to appointed counsel that goes beyond constitution requirements." State exrel. Asberry v. Payne (1998), 82 Ohio St.3d 44, 46, 1998-Ohio-596. That section states, inter alia:
 {¶ 8} "A child, his parents, custodian, or other person in loco parentis of such child is entitled to representation by legal counsel at all stages of the proceedings and if, as an indigent person, he is unable to employ counsel, to have counsel provided for him pursuant to Chapter 120. of the Revised Code. If a party appears without counsel, the court shall ascertain whether he knows of his right to counsel and of his right to be provided with counsel if he is an indigent person. The court may continue the case to enable a party to obtain counsel or to be represented by the county public defender or the joint county public defender and shall provide counsel upon request pursuant to Chapter 120. of the Revised Code. Counsel must be provided for a child not represented by his parent, guardian, or custodian. If the interests of two or more such parties conflict, separate counsel shall be provided for each of them."
 {¶ 9} The provisions of R.C. 2151.352 are repeated by Juv.R. 4(A), which states:
 {¶ 10} "Every party shall have the right to be represented by counsel and every child, parent, custodian, or other person in loco parentis the right to appointed counsel if indigent. These rights shall arise when a person becomes a party to a juvenile court proceeding. When the complaint alleges that a child is an abused child, the court must appoint an attorney to represent the interests of the child. This rule shall not be construed to provide for a right to appointed counsel in cases in which that right is not otherwise provided for by constitution or statute."
 {¶ 11} Appellant, Rosalee Alfrey, was represented by counsel appointed by the court. At the commencement of the R.C. 2151.414
dispositional hearing, she asked the court to appoint separate counsel to represent her minor children, suggesting that, if asked, they would express a desire to remain with her, which conflicted with the recommendation filed by the guardian-ad-litem that their permanent custody should be granted to the Department.
 {¶ 12} The juvenile court agreed to interview the children concerning their wishes. When it did, at the close of the evidence, three of the four children expressed a strong desire to stay with Appellant. The fourth expressed no desire, but wasn't asked.
 {¶ 13} The trial court denied Appellant's request for counsel to represent her children. The court reasoned, essentially, that the function of their legal representation was the responsibility of the guardian ad litem the court had appointed.
 {¶ 14} The guardian ad litem was a representative and employee of CASA, an organization. The individual who filed the guardian ad litem's report on CASA's behalf, recommending termination of parental rights, is Sharon Coyle. The record does not indicate that Coyle is a licensed attorney or that her responsibilities encompassed legal representation.
 {¶ 15} The juvenile court is required by R.C. 2151.281 (B)(1) and Juv.R. 4(B)(5) to appoint a guardian ad litem in proceedings to terminate parental rights. The guardian ad litem's responsibility is to ". . . perform whatever functions are necessary to protect the best interest of the child, including, but not limited to, investigation, mediation, monitoring court proceedings, and monitoring the services provided the child by the public children services agency or private child placing agency that has temporary or permanent custody of the child, and shall file any motions and other court papers that are in the best interest of the child." R.C. 2151.281(I).
 {¶ 16} A guardian ad litem is an agent of the court; and, while charged to protect the child's best interest, nevertheless owes his or her first duty to the court itself. The court appoints the guardian on the authority of the doctrine of parens patriae, which maintains that the state, like a parent, has a general responsibility for the welfare of its infant children and a resulting duty to act to protect that welfare when there is reason to believe that natural parents won't. Stuckey, Guardiansad Litem as Surrogate Parents: Implications for Role Definition andConfidentiality (1996), 64 Fordham L.Rev. 1785.
 {¶ 17} A child, of course, suffers the legal disability of minority. However, it is not the child's legal disability that causes the state to appoint a guardian ad litem in a termination of parental rights proceeding. Rather, it is the alleged inability of the parent, who is otherwise presumed to act in the child's best interest, to manage his own affairs in order to do that. Id.
 {¶ 18} Because a guardian ad litem owes his or her principal duty to the court, a guardian ad litem may properly reject the child's expressed wishes and support a contrary position, one that the guardian believes is in the child's best interests. Lawyers who function as legal representative are not free to do that because lawyers are required to abide by a client's decisions concerning the objectives of the representation, irrespective of whether the lawyer agrees with them or not. Therefore, if a child expresses a desire concerning custody, the child's lawyer may support only that view or resign the representation.Id.
 {¶ 19} A licensed attorney may serve as guardian ad litem. The same individual may also serve as the child's legal representative in a proceeding before the juvenile court so long as no conflict arising from those dual roles exists. Juv.R. 4(C)(1). If either that person or the court finds a conflict, the court must appoint a new guardian ad litem. Juv.R. 4(C)(2). The rationale for the requirement was explained in In reBaby Girl Baxter (1985), 17 Ohio St.3d 229, 232:
 {¶ 20} "The duty of a lawyer to his client and the duty of a guardian ad litem to his ward are not always identical and, in fact, may conflict. The role of guardian ad litem is to investigate the ward's situation and then to ask the court to do what the guardian feels is in the ward's best interest. The role of the attorney is to zealously represent his client within the bounds of the law. DR 7-101; DR 7-102."
 {¶ 21} The trial court was required by Juv.R. 4(B)(5) and R.C.2151.281(B)(1) to appoint a guardian ad litem for Appellant's children. The court was not likewise required by R.C. 2151.352 or Juv.R. 4(A) to appoint counsel to represent them. The children were not parties to the action, and the Juv.R. 4(B)(5) requirement applies to a person who is a "party." R.C. 2151.281(B)(1) is not similarly limited. However, its requirements apply to a "child not represented by his parent, guardian, or custodian," and in this instance the Appellant, their parent, was represented by counsel. Further, her position concerning custody and those of her children, as she suggested them to be, were exactly aligned. In that situation, Appellant's presumed inability to represent her children's "best interests" that required appointment of a guardian ad litem does not similarly impair her ability to represent their legal interests through the attorney appointed to represent Appellant in the proceeding. Therefore, on this record the court was not required by R.C.2151.351 or Juv.R. 4(A) to appoint separate counsel to represent the children.
 {¶ 22} The juvenile court misconstrued the role and responsibility of the guardian ad litem when it reasoned that she could substitute for an attorney whom the court might be required to appoint to represent the children's legal interests. The two roles and sets of responsibilities are distinct, as we have said. However, Appellant's suggestion of a conflict between the recommendation of the guardian ad litem and the desires of her children did not require the court to appoint counsel to represent them.
 {¶ 23} The guardian ad litem is not a party, and her report is not a matter of evidence. The guardian ad litem's recommendation created no form of conflict between the children and the person presumed to represent their legal interest, the mother in this instance, that required separate representation. The guardian ad litem is but an officer of the court, one not aligned with any party on the legal issues presented.
 {¶ 24} We find that, on this record, the juvenile court did not err when it declined to appoint separate counsel to represent Appellant's minor children. Having said that, we make three further observations.
 {¶ 25} First, because the guardian ad litem the court appointed is not a licensed attorney, she had no duty to zealously represent the children's legal interests that might conflict with her duty as guardian ad litem to represent their personal interests in this proceeding. Thus, the potential for conflict in Baxter, supra, was not present. Also see:In re Howard (1997), 119 Ohio App.3d 201; In re Smith (1991),77 Ohio App.3d 1; Bawidamann v Bawidamann (1989), 63 Ohio App.3d 391. Had the guardian ad litem been a licensed attorney, and notwithstanding the lack of a formal appointment as counsel, the same might not apply. See Inre Janie M. (1999), 131 Ohio App.3d 637.
 {¶ 26} In that connection, we also note that the court permitted the guardian ad litem to act as an attorney, cross-examining witnesses who were called by the parties to testify. The court is authorized to appoint an attorney to represent a guardian ad litem. Juv.R. 4(C)(3). However, and because a guardian ad litem is not a party but an agent of the court, allowing the guardian ad litem to function as an attorney would act presents potential problems. See In re Duncan/Walker Children
(1996), 109 Ohio App.3d 481. That is especially so when the position of the guardian ad litem conflicts with those of the children and their parents. However, when the person appointed to act as guardian ad litem is not a licensed attorney, he or she has no professional duty to act zealously on behalf of the children's interests that conflict with her obligations as guardians ad litem.
 {¶ 27} As a second observation, we note that two other appellate districts have decided this issue differently, holding that the children in a deprivation of parental rights proceeding are entitled to counsel when their wishes conflict with the position of the guardian ad litem. See In re Janie M., supra; In re Clark (2001), 141 Ohio App.3d 55. Both decisions rely on the very broad construction given to R.C. 2151.352 inState ex rel Asberry v. Payne, supra, which held that a grandmother who had acted as a custodian was entitled to appointment of counsel by that section.
 {¶ 28} "Custodians" are one of the classes of persons to whom R.C. 2151.352 specifically applies. Notably, the Asberry court did not also state that the child involved in that custody case was entitled by R.C. 2151.352 to counsel of his own. Further, in Clark, supra, the court found that the position of the children were not clearly aligned with those of their parents or other custodians who were represented. The opposite applies here, where the positions of Appellant and her children are aligned.
 {¶ 29} Third, we confess a practical concern about the burdens imposed on the juvenile court by a holding that counsel must be appointed to represent children in an R.C. 2151.414 proceeding when their desires conflict with the guardian ad litem's recommendation. That would have required the appointment of one more attorney here, possibly four more, one for each child. It is difficult to discern what benefit another attorney or attorneys could bring to the children, as a practical matter, that Appellant's own attorney could not bring to them as well. Would the guardian ad litem then also ask for appointed counsel? Would a guardian ad litem be required for each child?
 {¶ 30} These are not wholly "imaginary horribles" in a case of this kind. They are potential, but real, so long as R.C. 2151.352(B)(1) is read to apply to any child in a juvenile proceeding, whether that child is a party or not. When the child is a party, as in a delinquency adjudication, appointment of counsel is plainly required, both by rule and statute as well as a matter of constitutional right. Gault, supra. The same applies to parents who are parties in deprivation of parental rights proceedings. Lassiter, supra. However, neither likewise applies to require counsel for the children involved in those proceedings. They are not parties, but are wards of the court. Further, their legal interests are presumed to be protected by the legal representation for one of the parties, so long as their positions vis-a-vis the relief requested in the proceeding are aligned, as the positions of Appellant and her children were here.
 {¶ 31} The third assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR {¶ 32} "The trial court failed to appoint an attorney to represent the father, in violation of Ohio Juvenile Rule 4 and Ohio Revised Code2151.352."
 {¶ 33} Appellant's spouse, Christ Alfrey, did not appeal from the juvenile court's order depriving him of his parental rights. Appellant argues that she has standing to prosecute the alleged error because it was prejudicial to her rights, as well. In re Clark, supra; In re Smith,supra.
 {¶ 34} Christ Alfrey was entitled to appointment of counsel to represent him if he is indigent. R.C. 2151.352; Juv.R. 4(B)(5). The court had an appointed attorney to represent him. The attorney did not appear at the dispositional hearing, however. The following colloquy ensued at its commencement:
 {¶ 35} "[THE COURT:] We are joined today by a man who is apparently the father of the children. Are you Christ Alfrey?
 {¶ 36} "MR. ALFREY: Yes.
 {¶ 37} "THE COURT: Where do you live?
 {¶ 38} "MR. ALFREY: 922 Tibbets.
 {¶ 39} "THE COURT: Okay. Mr. Alfrey, a lady by the name of Alice Thoresen was previously appointed to be your lawyer; and she's filed a motion with this Court asking that she be allowed to withdraw as your lawyer because she doesn't have any ability to communicate with you.
 {¶ 40} "She said she's written you many times with no response. She's attempted to reach you through other means with no response and doesn't know how to begin to represent your interests. A lawyer can only do the job that the client asks them to do.
 {¶ 41} "In this case your lawyer says she doesn't know what you want her to do. She's had no ability to prepare on your behalf. She has no witnesses to call. Truly if I called upon her to speak on your behalf, she would indicate she just doesn't even know what to say for you because you failed to communicate with her.
 {¶ 42} "Under the circumstances she couldn't keep her oath to the Court and her oath to the profession, which would be a requirement that she zealously represent the interests of her client.
 {¶ 43} "Under the circumstances, I am going to grant her motion to withdraw as your lawyer as I could not expect her to do that job without the ability to communicate with you.
 {¶ 44} "I'm signing the entry now, and I'll give it to Deputy Jackson to get it filed so that you now are no longer represented by Ms. Thoresen; but I'll turn to you, Mr. Alfrey.
 {¶ 45} "Were you aware that Children's Services had filed this motion for permanent custody?
 {¶ 46} "MR. ALFREY: Yeah. I just didn't know when it was coming?
 {¶ 47} "THE COURT: In fact, this was filed many, many months ago, was it not? And you've been aware of it for months? Since when, May?
 {¶ 48} "MS. COYLE: May.
 {¶ 49} "THE COURT: May; is that right?
 {¶ 50} "MR. ALFREY: (Shakes.)
 {¶ 51} "THE COURT: You were advised of it then, were you not?
 {¶ 52} "MR. ALFREY: Probably got the letter at home.
 {¶ 53} "THE COURT: Well, you have received correspondence from Ms. Thoresen asking you to make an appointment?
 {¶ 54} "MR. ALFREY: Not this last time.
 {¶ 55} "THE COURT: She's indicated that she's tried to contact you without success. Have you made any effort to contact her?
 {¶ 56} "MR. ALFREY: I've been to her office about six times.
 {¶ 57} "THE COURT: Anytime in past since this motion for permanent custody was filed?
 {¶ 58} "MR. ALFREY: I ain't for sure.
 {¶ 59} "THE COURT: Well, are you ready to present your case today? Ready to present your evidence today?
 {¶ 60} "MR. ALFREY: I ain't got none.
 {¶ 61} "THE COURT: Well, Children's Services is asking to terminate your parental rights for the four children and find them what they believe would be a safe, permanent home.
 {¶ 62} "Previously or perhaps Ms. Thoresen on your behalf told the Court that you objected to that.
 {¶ 63} "Do you have any evidence today to object, any evidence to the contrary today?
 {¶ 64} "MR. ALFREY: (Shakes).
 {¶ 65} "THE COURT: Is it still your position that you want to object?
 {¶ 66} "MR. ALFREY: (Nods.)
 {¶ 67} "THE COURT: Yes?
 {¶ 68} "MR. ALFREY: (Nods).
 {¶ 69} "THE COURT: I'm not sure I understand that, then, Mr. Alfrey.
 {¶ 70} "MR. ALFREY: Well, I want them to come home with me.
 {¶ 71} "THE COURT: Have you done anything to work with the Department to get them home or done anything with your lawyer to help convince the Court that they ought to come home?
 {¶ 72} "MR. ALFREY: No.
 {¶ 73} "THE COURT: Nevertheless you want to have a hearing? You want to start a two- or three-day trial today? Is that your position?
 {¶ 74} "MR. ALFREY: I guess.
 {¶ 75} "THE COURT: I don't want you to guess. I want to know if you object to Children's Services' motion. Then we'll start a trial. If you agree to Children's Services' motion, you need to tell me that, too.
 {¶ 76} "What's your position, Mr. Alfrey?
 {¶ 77} "MR. ALFREY: I don't agree.
 {¶ 78} "THE COURT: Okay. We're ready to start our trial, then, today. * * *." (T. pp. 4-8).
 {¶ 79} The court permitted counsel to withdraw on the basis of the representations in her motion. In subsequent questioning, Christ Alfrey disputed them. However, he wasn't under oath, and Attorney Thoresen failed to appear at all. One might conclude that, at least, the court should have conducted an evidentiary hearing on counsel's motion before it required Alfrey to proceed unrepresented. The threshold question, however, is whether this so prejudiced Appellant, Rosalee Alfrey, that she has standing to prosecute any resulting error in this appeal.
 {¶ 80} Appellant may have standing to prosecute this claim if she was prejudiced by her spouse's lack of representation. His right to representation is fundamental. Lassiter, supra. The court was required by R.C. 2151.352 and Juv.R. 4(B)(5) to implement the right. However, the court's failure to do so, even if it was without sufficient cause and deprived her spouse of a fundamental right, does not necessarily operate to Appellant's prejudice.
 {¶ 81} Christ Alfrey was present at the proceeding. He was available to be called as a witness. Appellant's counsel could have called him, but didn't. In that circumstance, it's difficult to see how Appellant was prejudiced by Christ Alfrey's own lack of legal representation. In our view, an assumption that she was prejudiced because his counsel's efforts would have benefitted Appellant as well is too remote and speculative a prospect to support a finding that she was prejudiced.
 {¶ 82} The fourth assignment of error is overruled.
 FIRST ASSIGNMENT OF ERROR {¶ 83} "There was not sufficient evidence to support the decision of the trial court to grant permanent custody of the minor children to the Clark County Department of Job and Family Services."
 SECOND ASSIGNMENT OF ERROR {¶ 84} "The trial court's decision to grant permanent custody of the minor children to the Clark County Department of Job and Family Services was against the manifest weight of the evidence."
 {¶ 85} If a child is adjudicated "dependent," as defined in R.C.2151.04, the court has the option of several different dispositions. Those include placing the child in protective supervision, committing the child to the temporary custody of a public children services agency, or committing the child to the permanent custody of a public children services agency. R.C. 2151.353(A)(1), (2) and (4).
 {¶ 86} An award of permanent custody requires a determination by the court in accordance with R.C. 2151.414(E) that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, and a further determination in accordance with R.C.2151.414(D) that permanent commitment is in the child's best interest. R.C. 2151.353(A)(4). See also R.C. 2151.414(B)(2).
 {¶ 87} On or about April 14, 1998, the juvenile court placed the Alfrey children in the protective supervision of the Department after the parents had agreed to a finding that the children were dependent. Subsequently, the children were removed from their mother's home in February 1999, and placed in shelter care. On or about April 29, 1999, the juvenile court adjudicated the Alfrey children dependent, and awarded temporary custody to the Department in accordance with R.C. 2151.353(A)(2).
 {¶ 88} In December 2000, the children returned briefly to their mother's home, but were removed again on or about May 4, 2001. The Department then filed a motion in accordance with R.C. 2151.413, seeking permanent custody of the children.
 {¶ 89} R.C. 2151.413(A) authorizes a public children services agency that has temporary custody of a child pursuant to an order issued under R.C. 2151.353(A)(2) to seek permanent custody of that child. Under R.C. 2151.353(A)(4), before the child can be committed to the permanent custody of the public children services agency, the court must determine (1) that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, R.C.2151.414(E), and (2) that the permanent commitment is in the child's best interest, R.C. 2151.414(D). Accord: R.C. 2151.414(B)(2).
 {¶ 90} The motion filed by the Department seeking permanent custody of the Alfrey children resulted in a hearing held in accordance with R.C. 2151.414. See R.C. 2151.414(A)(1). Following that hearing, the juvenile court awarded the Department permanent custody of the Alfrey children. In its judgment entry the court specifically found that it was in the best interest of these children to grant permanent custody to the Department. The court also set forth its reasons for that finding. Many of those reasons address the "best interest of the child" factors in R.C. 2151.414(D) that the court is required to consider. Those reasons are as follows:
 {¶ 91} "There is a reasonable probability that this healthy, capable child can be adopted. The child has lived in legal limbo for many months. The child would benefit greatly from a permanent, secure home.
 {¶ 92} "The child has not lived exclusively with either parent for an extended period of time. The child has only visited briefly and infrequently with either parent since removal.
 {¶ 93} "The Guardian ad Litem for the child recommended that the motion for permanent custody be granted.
 {¶ 94} "By their actions and inaction, it is clear that the parents do not love their child or want to raise the child. The child does truly know the parents and has a bond with them. Yet, it is best to break the weakened, misplaced connection now so that a loving, permanent relationship can be established while the child is young.
 {¶ 95} "The child is mentally, physically and emotionally capable of proper development and growth if placed with an adequate, caring adult. The child can best do this in a legally secure, permanent home. The parents are not able to provide such a home."
 {¶ 96} On remand from this court, the Juvenile Court also found that these children could not be placed with either parent within a reasonable time or should not be placed with either parent. The court gave its reasons for that finding. Those reasons, which demonstrate the unfitness of these parents vis-a-vis the existence of one or more of the factors set out in R.C. 2151.414(E)(1)-(16), are as follows:
 {¶ 97} "1. The parents have failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.
 {¶ 98} "2. The parents have demonstrated a lack of commitment toward the children by failing to regularly support, visit or communicate with the children when able to do so.
 {¶ 99} "3. The parents have repeatedly withheld medical treatment or food from the children when the parents have the means to provide the treatment or food.
 {¶ 100} "4. The parents for any reason are unwilling to provide food, clothing, shelter and other basic necessities for the child or to prevent the child from suffering physical, emotional or sexual abuse or physical, emotional or mental neglect.
 {¶ 101} "5. The parents have regularly and consistently neglected the educational needs of the children."
 {¶ 102} In child custody cases, the focus of any decision must be on what is in the child's best interests. deLevie v. deLevie (1993),86 Ohio App.3d 531, 539. The trial court's discretion should be given "the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct." Miller v. Miller (1988),37 Ohio St.3d 71, 74.
 {¶ 103} Although the trial court's discretion in a custody case is broad, it is not absolute. In the Matter of Calvin and Tonya Beal
(October 5, 1992), Clark App. No. 2903. A trial court's decision in a custody case is "subject to reversal upon a showing of an abuse of discretion." Miller, supra at 74. `The term "abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 104} In order to grant permanent custody of the Alfrey children to the Department, the court must determine by clear and convincing evidence that it is in the best interest of the children to grant permanent custody to the agency, and that the children cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(B). Clear and convincing evidence is evidence that will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. Cross v.Ledford (1954), 161 Ohio St. 469. The trial court's decision relating to permanent custody of children will not be overturned on appeal because it is not supported by sufficient evidence or is against the manifest weight of the evidence so long as the record contains competent, credible evidence from which the court could have formed a firm belief or conviction that the essential statutory elements have been established.In re Conley/Witt Children (Feb. 6, 1998), Clark App. No. 96-CA-0090;Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77.
 {¶ 105} As we have already noted, the Juvenile Court made the "best interest" and "placement" findings required in order to grant permanent custody of these children to the Department, and gave its reasons for those findings. Appellant, Rosalee Alfrey, argues that the evidence presented does not support the trial court's "placement" finding, and the reasons offered in support of that finding.
 {¶ 106} For instance, Appellant points out that a social worker with the Department, Kimberly Dysert, testified that Appellant had completed parts of her case plan. Ms. Dysert also testified however that Appellant did not "substantially comply" with the case plan. Additionally, Ms. Dysert testified that while the children were in their mother's care, problems arose with the children not consistently getting their medicine, inconsistent attendance by the mother and children at scheduled counseling sessions, unclean housing and insufficient food. According to Ms. Dysert, the children had better school attendance and less behavior problems when not in their mother's care.
 {¶ 107} Appellant argues that she utilized all of the various social and rehabilitative resources made available to her in order to remedy the conditions that caused her children to be removed from her home. Appellant points to testimony by a counselor at Clark County Mental Health Services, Mark Schweikert, that Appellant attended counseling sessions there. However, Mr. Schweikert also testified that he counseled Amanda Alfrey and while she was in her mother's care there were two missed sessions, no shows, with no reason given. While in her mother's home, Amanda's behavior showed she was under stress or fearful, she became aggressive and uncooperative in counseling, and her hair and clothes were dirty and she lost weight. After Amanda was placed in foster care these things improved.
 {¶ 108} Appellant also points to testimony by a counselor at Osterlen Services for Youth, Suzanne Mitchell, that Appellant attended counseling there. Ms. Mitchell also testified however that Appellant did not consistently attend counseling sessions with her child, Christ Alfrey, as she was supposed to do. Moreover, when Christ Alfrey was not in his mother's care, he attended counseling more consistently and his behavior and appearance improved. Ms. Mitchell testified that it was not in Christ's best interest to return to his mother's home.
 {¶ 109} Appellant further points to testimony by Gloria Woods, a social worker at the Clark County Children's Home, that Woods never observed any inappropriate conduct by Appellant while visiting her children, and that Appellant attended every scheduled visitation except one when there was a death in the family. Ms. Woods also testified however that Appellant does not consistently act as an effective parent with her children, and that her parenting skills have not improved over the last two years. Appellant interacts more with Amanda Alfrey than with the other children and even then Appellant interacts more like a sister than a mother-daughter. Moreover, the boys do not obey Appellant.
 {¶ 110} At the permanent custody hearing Appellant's testimony contradicted the testimony given by counselors, social workers, and psychologists on several issues including Appellant's ability and efforts to support and provide proper food, clothing, shelter and medical care for her children, and her ability to properly discipline her children and meet their educational needs. In resolving conflicts in the evidence the credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts, the Juvenile Court here, to resolve. State v. DeHass (1967), 10 Ohio St.2d 230.
 {¶ 111} Without question some of the evidence presented at the permanent custody hearing was favorable to Appellant. However, after carefully reviewing the entire record we conclude that competent, credible evidence was presented to support the Juvenile Court's determination that clear and convincing evidence exists that it is in the best interest of these children to grant permanent custody to the Department, and that these children cannot be placed with either parent within a reasonable time or should not be placed with either parent. Accordingly, the court's decision is supported by sufficient evidence and is not against the manifest weight of the evidence. The court did not abuse its discretion in awarding permanent custody of the Alfrey children to the Department.
 {¶ 112} The first and second assignments of error are overruled. The judgment of the trial court will be affirmed.
FAIN, P.J. and YOUNG, J., concur.