DECISION AND JUDGMENT ENTRY
{¶ 1} Daniel J. Beasley, a minor child, appeals the Scioto County Court of Common Pleas, Juvenile Division, adjudication granting permanent custody of him to the Scioto County Children Services Board ("SCCSB"). Daniel contends that the trial court's judgment is against the manifest weight of the evidence, and that a planned permanent living arrangement is in his best interest. Because the record contains some competent, credible evidence supporting the trial court's finding that Daniel could not be placed with his parents within a reasonable time, and further because the record does not contain any evidence of the factors required for a planned permanent living arrangement, we disagree.
 {¶ 2} Daniel also contends that the trial court erred in failing to appoint counsel for him. Because the trial court appointed an attorney as Daniel's guardian ad litem, who acted as his counsel, and because the trial court subsequently, before the permanent custody hearing and at the guardian ad litem's request, appointed separate counsel to represent Daniel, we find that Daniel suffered no prejudice as a result of the trial court's error. Accordingly, we overrule each of Daniel's assignments of error and we affirm the judgment of the trial court.
 I. {¶ 3} The SCCSB first obtained temporary custody of Daniel in May of 1999 when Daniel's mother, Samantha Beasley, filed a complaint in juvenile court asking the court to remove Daniel from her custody. Shortly before the one-year limit on the temporary custody order was to expire, Daniel's SCCSB caseworker informed Beasley that she needed to take Daniel home or make other arrangements for Daniel unless she wanted the SCCSB to file for permanent custody. Beasley told the caseworker that she would get back to the SCCSB with a decision, but Beasley did not follow through.
 {¶ 4} In May of 2000, the SCCSB filed a complaint for permanent custody, alleging that Beasley refused to take Daniel back into her home after the expiration of the temporary custody order initiated by Beasley. The trial court granted temporary emergency custody to the SCCSB and appointed attorney Roxanne Hoover to serve as Daniel's guardian ad litem. Hoover appeared at all court hearings on Daniel's behalf.
 {¶ 5} At the adjudication hearing the court found, by the agreement of the parties, that Daniel was dependent. A few months later, Hoover filed a motion asking the court to appoint an attorney for Daniel since it had not made a finding regarding whether the roles of counsel and guardian ad litem would conflict in Daniel's case and had not expressly appointed her to both roles. The court appointed attorney Jerry L. Buckler to represent Daniel on May 14, 2001.
 {¶ 6} The dispositional hearing began on October 24, 2001, and continued on February 25, 2002 and June 27, 2002. Beasley and her attorney appeared at the hearing and opposed terminating Beasley's parental rights, seeking a long-term foster care option called a Planned Permanent Living Arrangement ("PPLA") instead. Hoover (guardian ad litem) and Buckler (counsel), appeared on Daniel's behalf. Like Beasley, both opposed permanent custody and supported a PPLA.
 {¶ 7} The court heard testimony from Daniel's SCCSB case manager, his SCCSB caseworker, his foster parent, and his therapist. The hearing testimony revealed that Beasley initially put Daniel and his older brother into foster care because of allegations that the boys had sexual contact with their younger sister. The allegations were never verified against either boy. However, while the boys were in a foster home together, Daniel's older brother raped Daniel and was subsequently adjudicated delinquent due to the incident.
 {¶ 8} Witnesses testified that Daniel does not currently exhibit behavioral problems, with the exception of stealing, and that he can function in a family. Daniel's therapist testified that he can be placed in a regular foster home setting, rather than a therapeutic one. She also opined that he probably can be placed in a permanent adoptive home easily.
 {¶ 9} Beazley visits Daniel regularly. Daniel desperately wants to return home with Beazley. However, each of the four witnesses testified that Beasley repeatedly told them she has no intention of ever taking Daniel back into her home. The testimony revealed that Beasley wanted Daniel to receive counseling while in the SCCSB's custody, but that she refused to take part in any family counseling directed to the goal of reunification. Until the SCCSB filed for permanent custody, the SCCSB repeatedly informed Beasley that she could take Daniel home at any time. Beasley decided to surrender permanent custody of Daniel at one time, but then changed her mind. When the SCCSB informed her that it would file for permanent custody of Daniel unless she either took him home or made alternative arrangements, Beasley did nothing.
 {¶ 10} Daniel's therapist testified that it is in Daniel's best interest to sever his ties with Beasley if she will not take him home, because then Daniel can move on with his life. The therapist further testified that she has never recommended terminating parental rights in any previous case.
 {¶ 11} The trial court found that Beazley, by her refusal to cooperate with the SCCSB in reunification plans and by her refusal to accept Daniel back into her home, effectively abandoned Daniel. The court found by clear and convincing evidence that Daniel's best interest would be served by granting permanent custody to the SCCSB. The court further found that this case is not appropriate for a PPLA because Daniel was only thirteen years old at the time of the hearing. The court noted that Daniel had been in foster care for at least three and one-half years, and that he deserves better than to be consigned to foster care for another four-plus years.
 {¶ 12} Beasley and Hoover did not appeal the trial court's decision. Daniel's counsel, Buckler, filed an appeal on his behalf. Daniel asserts the following assignments of error: "I. the trial court erred by granting permanent custody of Daniel J. Beasley to the [SCCSB] as same was against the manifest weight of the evidence. II. The trial court erred by terminating parental rights and not extending long-term custody for Daniel J. Beasley when the minor child met the requirements for a [PPLA] and such an arrangement would be in the best interests of the child. III. The trial court erred to appellant's prejudice when it failed to appoint an attorney to represent the minor child upon the filing of the complaint for permanent custody."
 II. {¶ 13} In his first assignment of error, Daniel contends that the trial court's determination that placing him in the permanent custody of the SCCSB is in his best interest is not supported by clear and convincing evidence in the record. In his second assignment of error, Daniel contends that the trial court erred in not placing Daniel in a PPLA. Because these assignments of error overlap, we consider them jointly.
 {¶ 14} A permanent custody determination made pursuant to R.C.2151.414 must be supported by clear and convincing evidence. In re BabyGirl Doe, 149 Ohio App.3d 717, 738, 2002-Ohio-4470, at ¶ 89; In reHiatt (1993), 86 Ohio App.3d 716, 725. We will not reverse a trial court's order terminating parental rights if, upon a review of the record, we can find that the record contains sufficient evidence to satisfy the clear and convincing standard. Baby Girl Doe at ¶ 89; Inre Wise (1994), 96 Ohio App.3d 619, 626. The "clear and convincing evidence" standard is a higher degree of proof than the "preponderance of the evidence" standard generally utilized in civil cases but is less stringent than the "beyond a reasonable doubt" standard used in criminal cases. Baby Girl Doe at ¶ 89, citing State v. Schiebel (1990),55 Ohio St.3d 71, 74.
 {¶ 15} We will not substitute our own judgment for that of a trial court applying a "clear and convincing evidence" standard where some competent and credible evidence supports the trial court's factual findings. Schiebel; C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus. The trial court's discretion in making the final determination should be given "the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In re Alfrey, Montogomery App. No. 01CA0083, 2003-Ohio-608, at ¶ 102, citing Miller v. Miller (1988),37 Ohio St.3d 71, 74.
 {¶ 16} R.C. 2151.414(B) provides in part that the court may grant permanent custody to an agency if it is in the child's best interest and "the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents." In this case, the testimony revealed that Beasley has repeatedly stated her intention never to allow Daniel to return home, and Beasley has not sought to have Daniel return home at any time. Additionally, Beasley has refused to participate in family counseling geared toward reunification. Beasley ignored the recommendations of the SCCSB caseworkers and therapists who advised her to take Daniel home. We find that these facts constitute some competent, credible evidence that Daniel cannot be placed with Beazley within a reasonable time.
 {¶ 17} R.C. 2151.414(D) requires the court to make a finding regarding whether permanent custody is in the child's best interest. One of the factors that the trial court must consider in determining whether it is in a child's best interest to terminate parental rights is the child's interaction with his parents and other caregivers. R.C.2151.414(D)(1). Daniel notes that the record is replete with references to the ongoing positive interactions he has with Beasley. While this is true, the record also contains numerous references to the tremendous stress Daniel feels due to the fact that he wants to return home, and the confusion he has felt because Beasley told him that the SCCSB forced her to send him away from home.
 {¶ 18} R.C. 2151.414(D)(2) directs the court to consider the child's wishes. The SCCSB does not dispute that Daniel wishes to remain in contact with Beasley. The court must also consider the child's custodial history in assessing the child's best interest. R.C.2151.414(D)(3). At the time of the trial court's decision, Daniel had been in the SCCSB's custody for over forty consecutive months. Additionally, the court must consider whether the parent has abandoned the child. R.C. 2151.414(D)(5); R.C. 2151.414(E)(10). In this case, the court found that Beasley's inaction amounted to abandonment.
 {¶ 19} Finally, R.C. 2151.414(D)(4) directs the court to consider whether a "legally secure permanent placement" can be achieved without a grant of permanent custody to the agency. Daniel contends that a legally secure permanent placement can be achieved in this case by placing him in a PPLA, and therefore that the grant of permanent custody to the SCCSB is not in his best interests.
 {¶ 20} With a PPLA, the court grants an agency legal custody of a child without terminating the parent's parental rights. Pursuant to R.C.2151.353(A)(5), the court may grant a PPLA if:
(a) The child, because of physical, mental, or psychological problems or needs, is unable to function in a family-like setting and must remain in residential or institutional care.
(b) The parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems * * *.
(c) The child is sixteen years of age or older, has been counseled on the permanent placement options available to the child, is unwilling to accept or unable to adapt to a permanent placement, and is in an agency program preparing the child for independent living.
 {¶ 21} None of the situations in which a PPLA is authorized by statute is present in this case. Daniel's therapist testified that he is able to function in a family-like setting and does not require residential or institutional care. Beasley did not present any evidence that she has physical, mental or psychological problems that would render her unable to care for Daniel. And, finally, Daniel was only thirteen years old at the time of the disposition hearing. Therefore, as a matter of law, the trial court simply did not have the PPLA option available to it, despite the requests from Daniel, Daniel's guardian ad litem, and Beasley. Thus, the trial court did not fail to consider an available legally secure permanent placement alternative to permanent custody.
 {¶ 22} We find that some competent, credible evidence supports the trial court's determination that Daniel cannot be returned to Beasley's custody within a reasonable time and that granting the SCCSB permanent custody of Daniel is in his best interest. We further find that the trial court did not err in concluding that a PPLA was not an applicable option under the circumstances of this case. Therefore, we overrule Daniel's first and second assignments of error.
 III. {¶ 23} In his third assignment of error, Daniel contends that the trial court erred when it failed to appoint an attorney to represent him in the proceedings. The SCCSB contends that Hoover served as Daniel's attorney during the preliminary stages of this case, and notes that the trial court properly appointed another attorney once Hoover requested that it do so. The SCCSB also maintains that even if the trial court did err in failing to make a separate appointment of counsel until after Hoover's request, the error did not prejudice Daniel because no conflict existed between Daniel's wishes and Hoover's position regarding Daniel's best interests.
 {¶ 24} A guardian ad litem may serve as counsel to a ward when the guardian is an attorney admitted to practice in this state, "providing no conflict between the roles exist." Juv.R. 4(C)(1). However, "[i]f a person is serving as guardian ad litem and as attorney for a ward and either that person or the court finds a conflict between the responsibilities of the role of attorney and that of guardian ad litem, the court shall appoint another person as guardian ad litem for the ward." Juv.R. 4(C)(2).
 {¶ 25} The positions advanced by the attorney of a ward and by the guardian ad litem of the ward are often, but not always, the same. The attorney for the ward "is the spokesperson for the ward's wishes." In reStacey S (1999), 136 Ohio App.3d 503, 514. In contrast, the guardian ad litem's role is to investigate the ward's situation and inform the court of what the guardian ad litem believes is in the ward's best interest.Id.
 {¶ 26} In In re Duncan/Walker Children (1996), 109 Ohio App.3d 841, the Fifth Appellate District held that one person cannot act both as guardian ad litem and as attorney for the ward unless the trial court expressly makes a dual appointment and finds that no conflict exists.Id. at 845. The Sixth and Eighth Appellate Districts have followed the Fifth, citing Duncan for the rule that an appointment to act as a guardian ad litem does not constitute an appointment to act as the ward's lawyer without an express appointment to both roles. In re Clark,141 Ohio App.3d 55, 60, 2001-Ohio-4126; Stacey S. at 514.
 {¶ 27} The SCCSB urges us to adopt the position advanced by the dissent in Duncan, and hold that the trial court's appointment of an attorney to the position of guardian ad litem may serve as a de facto appointment to the position of counsel for the ward.
 {¶ 28} In the Duncan dissent, Judge Hoffman opined: "It appears to be the common practice of the trial court to allow a guardian ad litem
who is also an attorney to serve as counsel for the ward at various stages of the proceeding without a separate entry of appointment. I find that the trial court's acquiescence in (if not encouragement of) the guardian ad litem's participation as attorney for the ward constitutes a de facto appointment. Should a conflict between the two roles become evident to either the guardian ad litem or the trial court at any stage, Juv.R. 4(C)(2) specifically provides for the appointment of a new guardian ad litem. Though I would concede that a formalized entry reflecting dual appointment might be the better approach, I do not find the de facto appointment procedure utilized by the trial court in the case sub judice to constitute error as a matter of law, let alone reversible error as found by the majority." Id. at 847 (Hoffman, P.J., dissenting); see also Clark at 63 (Spellacy, J., dissenting); c.f. StaceyS. at 521 (Resnick, J., dissenting).
 {¶ 29} The SCCSB notes that Juv.R. 4(C) does not require an express finding that no conflict exists, and no other statute or rule refers to an express dual appointment or finding of no conflict. Moreover, the SCCSB notes that Ohio courts traditionally have not required a separate appointment of counsel for children in custody proceedings absent a direct conflict between the recommendation of the guardian ad litem and the expressed wishes of the children. The SCCSB contends that, absent legislative action, we should not create a requirement for an express dual appointment and finding of no conflict.
 {¶ 30} The SCCSB further contends that even if we find that the trial court erred in failing to expressly make a dual appointment and a finding that no conflict exists, we should nonetheless find that no prejudice to Daniel resulted in this case because: (1) Daniel was actually represented by Hoover in the early stages of the proceeding; (2) no conflict of interest existed, because Daniel's wishes and Hoover's recommendation did not diverge at any point during the proceedings; and (3) the trial court appointed a separate attorney to represent Daniel before the dispositional hearing.
 {¶ 31} Upon review, we agree that a trial court should either file a formalized entry reflecting a dual appointment and no conflict, or appoint a guardian ad litem and separate counsel. See In re Emery,
Lawrence App. NO. 02CA40, 2003-Ohio-2206, at ¶ 10. However, we also agree that the trial court's initial failure to do so did not result to prejudice to Daniel in this case. First, unlike the attorney/guardian ad litem in Clark, who did not act as an attorney for the ward by attending hearings, in this case, attorney Hoover entered her appearance at the probable cause and dependency hearings. Second, Daniel seeks to be placed in a PPLA, and Hoover's recommendation as guardian ad litem was that the court place Daniel in a PPLA. Thus, no conflict of interest exists.
 {¶ 32} Daniel contends that he would not have conceded dependency, as Hoover did, if he had been represented by counsel at that stage of the proceedings. However, Daniel does not now dispute, nor has he at any time prior to or after the appointment of counsel disputed, the fact that his mother refuses to take him back into her home. Rather, Daniel opposes the permanent custody disposition despite his acknowledgement that his mother refuses to take him home. Because Daniel's mother refuses to take him into her home, the trial court had no choice but to find Daniel dependant irrespective of his wishes. Under the circumstances, the trial court's dependency determination could not be avoided.
 {¶ 33} Moreover, the dependency determination served only to provide Daniel with a home pending final disposition. After the dependency finding, the SCCSB was still required to prove that Daniel had been abandoned or could not be placed with his mother within a reasonable time. Daniel's counsel cross-examined witnesses to put the SCCSB's proof to test, but could not overcome the undisputed evidence that Daniel's mother simply refuses to take him home.
 {¶ 34} In sum, we find that Daniel received representation of counsel throughout the proceedings below and that the trial court's error in failing either to make an express dual appointment or to make separate appointments at the outset did not prejudice Daniel in any way. Accordingly, we overrule Daniel's final assignment of error and we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure.
Exceptions.
Harsha, J. and Abele, J.: Concur in Judgment and Opinion.