OPINION
{¶ 1} Dakota Williams ("appellant"), appeals the February 4, 2003 judgment entry of the Juvenile Division of the Geauga County Court of Common Pleas terminating her parental rights and granting permanent custody of her minor children, Malcolm and Shaquille Williams, to Geauga County Job and Family Services ("appellee"). For the following reasons, we reverse.
 {¶ 2} Appellant gave birth to Malcolm Williams on May 22, 1996. Appellant was married to Malcolm's father, Larry Williams. Appellant, Malcolm, and Mr. Williams lived in Columbus and then in Cadiz, Ohio. Mr. Williams was abusive to both appellant and to Malcolm. In March 2000, appellant left Mr. Williams and went, with Malcolm, to a women's shelter in Geauga County. At that time, she was pregnant with her second son, Shaquille Williams.
 {¶ 3} On April 14, 2000, appellee (then known as the Geauga County Department of Human Services) filed a complaint alleging that appellant had "moved four (4) times in the past year providing an unstable home environment" for Malcolm and that Malcolm had begun to mimic the abusive behaviors observed in his home life. On June 20, 2000, the court adjudicated Malcolm to be a neglected and dependent child and ordered appellee to take temporary custody of Malcolm for placement in foster care. On September 11, 2000, the court returned Malcolm to appellant's custody and ordered appellee to exercise protective supervision over Malcolm.
 {¶ 4} On May 8, 2000, appellant gave birth to Shaquille. On June 16, 2000, appellee filed a complaint to have Shaquille adjudicated a neglected and dependent child. In addition to the circumstances surrounding Malcolm's neglect and dependency, the complaint alleged appellant's "history of poor parenting skills," observations that she failed to support Shaquille's head and neck and that she transported him without diapers, her vacillation about returning to Mr. Williams, and her inconsistent efforts to follow the existing case plan regarding Malcolm. On July 11, 2000, appellee was granted protective supervision over Shaquille. On September 15, 2000, protective supervision was continued and Shaquille was adjudicated a neglected and dependent child.
 {¶ 5} On October 23, 2001, the court again ordered Malcolm to be placed under appellee's temporary custody in foster care. The court found that appellant had been receiving regular treatment for her recurring depression, that she had participated in counseling with Malcolm and that appellant and Malcolm had a "good" relationship. The court remained concerned, however, about appellant's overall parenting skills, in particular appellant's failure to avail herself of public assistance, failure to complete Malcolm's school registration, failure to take Malcolm to see a dentist, as well as the amount of food available for the children and allegations that one of appellant's boyfriends had burned Malcolm with a cigarette.
 {¶ 6} On March 4, 2002, appellee moved for permanent custody of both Malcolm and Shaquille. In May of 2002, a four-day hearing was held on appellee's motion. At trial, there was evidence that Malcolm had consistently expressed a desire to remain with appellant. Malcolm's court-appointed guardian ad litem, however, recommended terminating appellant's parental rights. On June 5, 2002, the trial court granted appellee's motion for permanent custody.
 {¶ 7} In In re Williams, 11th Dist. Nos. 2002-G-2454 and 2002-G-2459, 2002-Ohio-6588, we held that "when a child consistently expresses a desire to be with a parent, then a juvenile court should investigate, giving due regard to the child's maturity and understanding of the proceedings, and make a ruling about whether an attorney should be appointed to represent the child's interest and expressed wishes." Id. at ¶ 26. Despite the conflict between Malcolm's expressed wishes and the recommendation of the guardian ad litem, the juvenile court failed to consider, on record, whether Malcolm was entitled to an attorney to represent his wishes. Id. at ¶ 27.
 {¶ 8} On remand, the juvenile court appointed attorney Carolyn Paschke to act as counsel for Malcolm for the purpose of "fil[ing] a response to the motion for permanent custody stating the position of the child with respect to permanent custody" and scheduled a "re-hearing" on appellee's motion for permanent custody for February 12, 2003. On January 9, 2003, Paschke filed a "Memorandum of Client's Position" with the court stating Malcolm's desire to return to his mother and stating the reasons why Malcolm wants to return to live with his mother. In a January 17, 2003, judgment entry, the court noted that the Ohio Supreme Court had issued a stay of this Court's decision in Williams and continued the February 12, 2003, re-hearing indefinitely pending the outcome of the review by the Ohio Supreme Court.
 {¶ 9} On February 4, 2003, the juvenile court entered judgment "that the appointment of an attorney to represent the child [Malcolm] is not necessary" and "reinstat[ing] its prior decisions ordering that [each child] be placed in the permanent custody of [appellee] for reasons previously stated in its judgment entry filed on the 5th day of June, 2002."[1] It is from this judgment that appellant timely brings appeal.
 {¶ 10} Appellant assigns the following errors for review:
 {¶ 11} "[1.] The trial court erred to the prejudice of Ms. Williams by failing to hold the new permanent custody hearing with the participation of appointed counsel for Malcolm when he was sufficiently mature enough to express his wishes and there was a conflict between his interests and those expressed by the guardian ad litem.
 {¶ 12} "[2.] The trial court erred in determining that granting permanent custody to the county was in the best interest of the child.
 {¶ 13} "[3.] The juvenile court erred in finding that the child could not be placed with Ms. Williams within a reasonable time and should not be placed with her, when that finding was against the manifest weight of the evidence.
 {¶ 14} "[4.] Malcolm was denied the effective assistance of counsel when his attorney failed to zealously represent him, but instead acted contrary to his wishes and violated his attorney-client privilege."
 {¶ 15} Appellant raises a number of arguments under her first assignment of error regarding the trial court's handling of this case after remand from this court. Appellant challenges the procedure by which the juvenile court determined what Malcolm's wishes were regarding his custody and challenges the court's determination that it was not necessary for Malcolm to be represented by counsel.
 {¶ 16} After remand, the juvenile court appointed Carolyn Paschke "as counsel" for Malcolm. Paschke's role, however, was not that of an independent advocate for Malcolm. Rather, her role was clearly limited to "fil[ing] a response to the motion for permanent custody stating the position of the child with respect to permanent custody." Paschke's Memorandum of Client's Position states Malcolm's understanding of the proceedings and lists his reasons for wanting to remain with appellant.
 {¶ 17} The document filed with the juvenile court by Paschke does not respond to the motion for permanent custody. Rather, it is a plain, almost literal statement of Malcolm's position. No attempt is made to advocate for Malcolm's position or even request that the court give it due consideration. Based in part on this statement of Malcolm's position, the court concluded that Malcolm "lacked maturity and would not benefit from the appointment of counsel."
 {¶ 18} This cursory process did not adequately protect Malcolm's rights and interests in this custody proceeding. The decision to appoint counsel is not driven by a specific age. When, as in this case, the court is informed of the child's expressed desire to remain with his natural parent, the decision to appoint counsel should be made on a case by case basis based on the child's maturity. At a minimum, the court should conduct an in-camera, recorded interview with the child before making a lack of maturity to benefit from having appointed counsel decision. Moreover, in cases such as this one, where counsel participates on behalf of a child, such counsel serves as an advocate for the child's position, not an additional evaluator of the child's maturity. The guardian ad litem already fills that role.
 {¶ 19} "Every party [to a juvenile court proceeding] shall have the right to be represented by counsel." Juv.R. 4(A); R.C. 2151.352
("[c]ounsel must be provided for a child not represented by the child's parent, guardian, or custodian"). "Party" includes "a child who is the subject of a juvenile court proceeding." Juv.R. 2(Y). Therefore, Malcolm, as well as Shaquille, is a party to these proceedings and entitled to representation by counsel. This right is a basic presumption in all juvenile court proceedings. Wiliams, supra, at ¶ 18; In reClark, 141 Ohio App.3d 55, 60-61; In re Janie M. (1999),131 Ohio App.3d 637, 639. It is not necessary that any party raise the issue with the court before the right attaches.
 {¶ 20} The juvenile court may be excused from appointing independent counsel to represent a child-party in a proceeding to terminate parental rights in certain circumstances. Where there is no conflict of interest, a child's guardian ad litem may act as counsel for the child. Juv.R. 4(C); R.C. 2151.281(H). However, the juvenile court must expressly state that it is making a "dual appointment" for the guardian ad litem to act as the child's attorney and must also make a finding that no conflict of interest exists. Clark, supra, at 60; JanieM., supra, at 639; In re Duncan/Walker Children (1996),108 Ohio App.3d 841. Where a conflict exists, as when the guardian's recommendation regarding permanent custody differs from the child's wishes, the guardian ad litem cannot serve as counsel and the court must appoint independent counsel to represent the child. Janie M., supra, at 639; In re Smith (1991), 77 Ohio App.3d 1, 14.[2]
 {¶ 21} If a child is of insufficient competency to formulate his or her own wishes, then the apparent conflict between the child's wishes and the guardian ad litem's recommendation does not bar the appointment of the guardian to serve as counsel. Williams , supra, at ¶ 24. This determination, however, is ancillary to the child's right to counsel by virtue of its status as a party to the action. The child's right to counsel is presumed before the court may consider the issue of whether the child's wishes conflict with the guardian ad litem's recommendation regarding custody. Cf. Clark, supra, at 61 (where "the children were entitled to legal representation and did not receive it, we need not decide whether the asserted conflict between the GAL's recommendation and Dwayne's wishes entitled him to such representation").
 {¶ 22} As stated in our previous decision, "no bright-line rule can be imposed regarding what age a child would be considered mature for the purposes of legal counsel" in this situation. Williams, supra, at ¶ 25. In general, a court should consider the child's understanding of the proceedings and their consequences, the child's understanding of the preference he or she is expressing, and the consistency with which the child expresses its wishes. The reasons behind a child's wishes are not as important as the child's understanding that the court is making a decision regarding who the parents will be and that the child have some appreciation of what parents are and what parents are supposed to do.[3]
 {¶ 23} In this case, the juvenile court erred when it failed to conduct a new hearing and an in-camera interview with Malcolm after receiving attorney Paschke's report. By receiving this report, the court merely received evidence on the issue of whether Malcolm was entitled to counsel and, indirectly, on the ultimate issue to be decided, inasmuch as the court was obligated to consider Malcolm's wishes as expressed in the report. By receiving this evidence, without providing appellant the opportunity to review this report and to challenge the contents contained therein at a hearing,[4] the court denied appellant her right to due process. Cf. In re Hayes (1997), 79 Ohio St.3d 46, 48, quoting Smith, supra, at 16 (in a proceeding to terminate parental rights "parents `must be afforded every procedural and substantive protection the law allows'").
 {¶ 24} Moreover, once attorney Paschke was appointed by the court in response to our previous ruling, her role was to advocate, not merely reiterate, Malcolm's position.
 {¶ 25} We note that the court had scheduled a "re-hearing" at a time after the report would have been submitted. This re-hearing, however, was indefinitely continued when the court lost jurisdiction pending review of the case by the Ohio Supreme Court. In re Williams,98 Ohio St.3d 1408, 2003-Ohio-60. On February 4, 2003, only six days after the juvenile court regained jurisdiction, and without any notice given to the parties that it had regained jurisdiction, the court rendered judgment again on appellee's motion for permanent custody.
 {¶ 26} In In re Hoffman, 97 Ohio St.3d 92, 2002-Ohio-5368, the Ohio Supreme Court addressed an issue of first impression: "whether in a permanent custody action, a party may cross-examine the guardian ad litem, notwithstanding the language of R.C. 2151.414(C) [requiring the submission of the guardian ad litem's report]." Id. at ¶¶ 10, 18. At trial, the court denied a request that the guardian ad litem be called to testify regarding her report filed pursuant to R.C. 2151.141(C), nor were the parties permitted to cross-examine the guardian ad litem regarding her report. Id. at ¶¶ 5, 24. The court held that this failure constituted a violation of due process: "In a permanent custody proceeding in which the guardian ad litem's report will be a factor in the trial court's decision, parties to the proceeding have the right to cross-examine the guardian ad litem concerning the contents of the report and the basis for a custody recommendation." Id. at syllabus.[5]
 {¶ 27} The Hoffman decision was applied by this court to a situation similar to the one before us now in In re Salsgiver ,2003-Ohio-1203. In Salsgiver, the lower court had erred, in part, by granting a motion for permanent custody where the guardian ad litem's report failed to discuss the child's wishes regarding custody. Id. at ¶ 12. On remand, the court ordered the guardian ad litem to submit a supplemental report addressing the child's wishes. Id. at ¶ 13. The court rendered its second judgment granting permanent custody after the submission of this supplemental report without hearing. Id. Again, we reversed. "Although the Hoffman opinion did not address the specific issue before this court, the legal underpinnings of the Hoffman logic support the conclusion in this case that the trial court erred in considering the supplemental report of the guardian ad litem in an ex parte manner. That is, the Hoffman opinion stands for the proposition that, regardless of the substance of the report of the guardian ad litem, a parent should always be given the opportunity to present new evidence in regard to the report and to cross-examine the guardian ad litem as to the substance of his factual findings and recommendations. Without such an opportunity, not only is the parent denied complete due process prior to the termination of her parental rights, but the trial court's decision is based on evidence which has not been subjected to the rigors of the adversarial process." Id. at ¶ 26.
 {¶ 28} We find the present situation similar to the situation inSalsgiver. In both cases, the court received the additional or supplemental evidence of the child's wishes and rendered judgment terminating parental rights without holding a hearing or giving the parent an opportunity to respond to or cross-examine the evidence submitted.
 {¶ 29} Finally, the denial of due process in this case affected the fundamental fairness of these proceedings. Malcolm's guardian ad litem advocated a position contrary to Malcolm's wishes, which were only presented to the court indirectly through the testimony of his therapist and through the unchallenged findings of attorney Paschke's report. Having reviewed the evidence, we find the impression created by attorney Paschke's report and the therapist's testimony to be inconsistent regarding Malcolm's level of maturity and competency to express his desires. Further examination of this evidence was necessary to ensure a proper determination on the issue of Malcolm's competency and entitlement to representation by independent counsel.[6] Accordingly, appellant's first assignment of error has merit.
 {¶ 30} Since we are remanding this case for a new hearing, we wish to make a few observations regarding the way in which the juvenile court went about determining Malcolm's wishes regarding his custody. In the normal course of proceedings, the child's wishes are conveyed to the court through the guardian ad litem. When a motion for permanent custody is filed with the court, "[a] written report of the guardian ad litem of the child shall be submitted to the court prior to or at the time of the hearing" for permanent custody. R.C. 2151.414(C). In addition to containing the guardian ad litem's recommendation regarding the motion for custody, this report should also contain a statement of the child's wishes. Before ruling on the motion, the juvenile court must consider "[t]he wishes of the child, as expressed directly by the child or through the child's guardian ad litem." R.C. 2151.414(D)(2). We have held that a judgment that fails to discuss a child's wishes, expressed through its guardian ad litem, is "facially defective" and must be reversed. In reSalsgiver, 11th Dist. No. 2002-G-2411, 2002-Ohio-3712, at ¶ 26.
 {¶ 31} In the instant case, the report of Malcolm's guardian ad litem was filed on March 4, 2002, two months prior to the May hearings. This report contains the guardian ad litem's recommendation that appellee seek permanent custody of Malcolm. The report is silent as to Malcolm's own wishes.[7] Moreover, Malcolm himself did not testify at the hearings. Since the guardian ad litem's report did not express Malcolm's wishes and Malcolm himself did not testify at the hearing, the earlier judgment did not comply with R.C. 2151.414(C). On remand, the juvenile court should make sure that the guardian ad litem's report filed with the court prior to the new hearing contains a statement of Malcolm's wishes and Shaquille's wishes to the extent that he has them, unless the children will be testifying directly, in addition to an evaluation of the children's competency and best interests.
 {¶ 32} The disposition of the first assignment of error moots appellant's other assignments of error. App.R. 12(A)(1)(c). Normally, it would be improvident to address the other issues raised by appellant at this time. However, we realize that our decision to reverse delays the final resolution of this matter and any further delay does not serve the interests of Malcolm or Shaquille. In the interest of judicial economy, as well as the children's interest, we will also address appellant's third assignment of error.
 {¶ 33} Under this assignment of error, appellant argues that the juvenile court's finding that the children could not be placed with appellant within a reasonable period of time was not supported by the manifest weight of the evidence.
 {¶ 34} In order for the juvenile court to grant a motion for permanent custody, it must determine "by clear and convincing evidence" that granting the motion is in the best interest of the child and that "the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." R.C.2151.414(B)(1). When making the latter determination, the court shall consider "all relevant evidence." R.C. 2151.414(E). If the court finds, by clear and convincing evidence, that one or more of the conditions listed in R.C. 2151.414(E)(1)-(16) exists, it shall enter a finding that the child cannot be placed with either parent within a reasonable time. Id.
 {¶ 35} It has often been remarked that the termination of parental rights is "the family law equivalent of the death penalty." Hayes, supra, at 48, quoting Smith, supra, at 16. Out of respect for maintaining the natural parental relationship, the Ohio Legislature requires that this relationship cannot be judicially terminated unless the termination is supported by the highest civil evidentiary standard — clear and convincing evidence. Clear and convincing evidence is evidence "sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." In re Shchigelski
(Oct. 20, 2000), 11th Dist. No. 99-G-2241, 2000 Ohio App. LEXIS 4900, at *11, citing In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368.
 {¶ 36} In the present case, the lower court found "that parents have failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the children's home" and that "both parents suffer from chronic mental illness that is so severe that it makes the parents unable to provide an adequate permanent home for the children at the present time and it is not anticipated by the court that either of these parents would be able to provide an adequate permanent home for the children within one year of the date of the permanent custody hearing." See R.C. 2151.414(E)(1) and (2).
 {¶ 37} We do not agree that either of these findings is supported by clear and convincing evidence. The October, 2001 judgment entry granting appellee temporary custody of Malcolm and Shaquille cited the following concerns regarding appellant's ability to effectively parent her children: appellant had ceased to attend individual counseling sessions to work on her parenting skills; appellant was disqualified for public assistance because of an abandoned trailer-home that she still owned; appellant had failed to provide the school with Malcolm's birth certificate; and appellant had failed to see to Malcolm's dental needs.
 {¶ 38} At the time of the hearing, in May, 2002, the court found that appellant had "rededicated herself to participating in counseling", but suspected that her motivation for doing so was to avoid losing custody of her children. The court also found that appellant's housing was stable and anticipated that it would continue to be so as long as she continued to comply with the requirements for public assistance.[8] The evidence at trial also showed that appellant had provided the school with Malcolm's birth certificate and that Malcolm had performed well in school while under appellant's custody. The issue of appellant providing for Malcolm's dental needs was moot at the time of the hearing as appellant no longer had custody of Malcolm.
 {¶ 39} We also note that the removal of Malcolm from appellant's custody in October, 2001 had a detrimental effect on Malcolm's behavioral issues. At that time, Malcolm's therapist anticipated discontinuing Malcolm's therapy for aggressive and anti-social behavior within a couple of months. After removal, these behaviors increased dramatically. Malcolm's therapist also testified to the strong bond between appellant and Malcolm and that Malcolm would be happier if he returned to living with appellant.
 {¶ 40} The October, 2001 judgment entry also indicated that the court was concerned that appellant provide a safe and wholesome environment for her children and that appellant avoid personal relationships that would put her children at risk. After the hearing the court did "not have concerns about the physical environment of the mother's home", but remained concerned about appellant's relationships, although she had recently finalized the divorce with the children's father and was not currently in a relationship.
 {¶ 41} Finally, the October, 2001 judgment entry expressed the court's concern that Shaquille's needs be properly assessed. After removal from appellant's custody, Shaquille began therapy for a speech delay problem.
 {¶ 42} The second factor cited by the court in its determination that the children could not be placed with appellant within a reasonable time was appellant's chronic mental illness. Appellant has been diagnosed with recurrent major depression and personality disorder and has been receiving treatment for her illness over the past nine years. This fact does not justify the lower court's finding that appellant would not be able to provide an adequate permanent home for her children. We note that at the time of the children's second removal in October, 2001, the lower court found that appellant had been seeing her psychiatrist, that her condition was stabilized through medication, and that her mood was reported as "not being depressed." Eighth months later at the custody hearing, appellant's psychiatrist testified that her condition had continued to improve since the removal of her children and that, with proper support and a limited work schedule, she felt appellant would be able to parent her children. Appellant's counselor testified at the hearing that she was "cautiously optimistic" that, with proper support, appellant would be able to parent her children.
 {¶ 43} Given that appellant had substantially remedied the conditions within her power that led to the removal of the children in October, 2001 and that appellant had been psychologically stable since before their removal and continued to be so, the juvenile court erred in finding that the children could not be placed with their mother within a reasonable time.
 {¶ 44} Underlying the lower court's decision was its justifiable concern that appellant will not be able to maintain the present stability of her mental health. The court stated that appellant's mental disorder "creates the greatest barrier to Dakota Williams being able to successfully parent her children." Although the court was "concerned that terminating the mother's relationship with Malcolm Williams may cause additional emotional harm to the child," it felt that, given appellant's chronic mental instability, there was an even greater risk of future emotional trauma to the children if they had to be removed again from appellant's custody. The possibility of future removal does not support the present permanent termination of appellant's parental rights. In reArvin (Apr. 4, 1990), 1st Dist. No. C-890006, 1990 Ohio App. LEXIS 1312, at *6-*9 (where parent's chronic mental illness is being controlled by medication and therapy, and does not make the parent unable to provide an adequate permanent home for the child at the present time and in the foreseeable future, a juvenile court order terminating parental rights is improper).
 {¶ 45} A decision based on clear and convincing evidence requires overwhelming facts, not the mere calculation of future probabilities. Inre Perales (1977), 52 Ohio St.2d 89, 98 (parents may be denied custody where the evidence indicates a "total inability to provide care or support"); In re Fry, 3rd Dist. Nos. 9-02-14, 9-02-15, 9-02-16,2002-Ohio-3935, at ¶ 8 ("the permanent removal of a child may be condoned only where there is demonstrated an incapacity on the part of the parent to provide adequate parental care"). While the evidence presented raises the possibility of a future removal, it does not create the firm conviction that such future removal is inevitable to the extent necessary to satisfy the clear and convincing evidentiary standard. Accordingly, the lower court's decision, under the record before us, is contrary to the concept of clear and convincing evidence.
 {¶ 46} Therefore, the February 4, 2003 judgment entry is reversed. This action is remanded to the juvenile court for further proceedings consistent with this opinion, including reappointment of counsel for Malcolm, allowing appellant the opportunity to challenge and question the guardian ad litem and the report of Malcolm's wishes regarding his custody, and allowing appellant to introduce relevant evidence on this issue. The juvenile court should hold a new hearing on appellee's motion for permanent custody and render a new judgment consistent with the rulings stated herein.
DONALD R. FORD, P.J., and JUDITH A. CHRISTLEY, J., concur.
[1] Although not reflected in the juvenile court's docket, the Supreme Court declined jurisdiction on January 29, 2003, thereby returning jurisdiction of the case to the juvenile court. In re Williams,98 Ohio St.3d 1425, 2003-Ohio-259.
[2] We take exception with a recent decision of the Second District inIn re Alfrey, 2nd Dist. No. 01CA0083, 2003-Ohio-608 , on this issue. InAlfrey, the court held that there is no conflict of interest where the recommendation of the guardian ad litem is contrary to the child's wishes, in part, on the grounds that children are not parties to custody proceedings. Id. at ¶¶ 21, 30. As quoted above, Juvenile Rule 2(Y) expressly defines "party" to include children who are the "subject of a juvenile court proceeding."
[3] In the case where the child is too young to express a preference, it is still incumbent upon the court to consider the child's lack of a recognizable preference as expressed by the guardian ad litem. In reHill, 11th Dist. No. 2002-G-2486, 2003-Ohio-1748, at ¶ 66; In reSalsgiver, 11th Dist. No. 2002-G-2478, 2003-Ohio-1203, at ¶ 36.
[4] In the alternative, the court also could conduct an in-camera evaluation with counsel for the parent or parents present.
[5] We note that the guardian ad litem who prepared and filed the report of March 4, 2002, did not testify at trial, although two former guardian ad litems in the case did testify.
[6] Attorney Paschke's report noted that Malcolm's therapist of two years was "available to answer any questions the court may have regarding Malcolm's wishes as well as give the court some insight as to Malcolm's maturity level and understanding of motion for permanent custody."
[7] We note that attached to the guardian ad litem's report was a three-page letter written by Malcolm's therapist, Elisa Gagliardi. Although this letter details some of the consequences of Malcolm's second separation from appellant, it does not clearly present Malcolm's own wishes. These were only conveyed to the court through Ms. Gagliardi's direct testimony at the hearing.
[8] At the time of the hearing, appellant was receiving SSI disability assistance.